PEOPLE *v.* HUNTLEY.

112    569
s71ᴺᵂ  178
e130  ²623
112    569
135   ²564

1. CONVICTS—CRIME COMMITTED IN PRISON—SUFFICIENCY OF INFORMATION.

Under section 64 of Act No. 118, Pub. Acts 1893, making convicts in prison for any term other than life, who commit any crime, subject to the same punishment as if the crime had been committed elsewhere, and section 65, providing that the warrant issued in such case shall be made in the ordinary form, and be directed to the warden of such prison, and that it shall set forth that the accused is imprisoned by authority of the laws of the State, an information against a convict for assault with intent to kill, which contains all the averments required by the statute to be set forth in the warrant, is sufficient; it being unnecessary to allege in detail the prior conviction and sentence of the respondent, and the lawfulness of his detention. *People* v. *Hamaker*, 92 Mich. 11, distinguished.

2. SAME—CONSTITUTIONAL LAW—STATUTES—OBJECT GERMANE TO TITLE.

Act No. 118, Pub. Acts 1893, entitled "An act to revise and consolidate the laws relative to the state prison, to the state house of correction,  *  *  *  and the government and discipline thereof, and to repeal all acts inconsistent therewith," does not embrace an object not expressed in its title, in that it contains a provision (section 64) for the punishment of convicts committing crimes in prison.

3. SAME—CRUEL AND UNUSUAL PUNISHMENT.

The punishment prescribed by the statute, being the same as if the crime had been committed at any other place or by a person not so confined, is not "cruel and unusual."

4. SAME—DOUBLE PUNISHMENT.

The fact that the warden of the prison may, by section 40 of the act, punish convicts for misconduct, does not render section 64 invalid as providing a second punishment for a single offense, the former section being designed merely to aid the authorities in maintaining discipline, and not to provide a punishment for crime.

5. SAME—SENTENCE TO COMMENCE IN THE FUTURE—UNCERTAINTY.

A convict imprisoned in state prison, convicted of a crime committed therein, may be sentenced to imprisonment to begin at

the expiration of the term which he was serving at the time such offense was committed, although the date of the expiration of such term is uncertain, under Act No. 132, Pub. Acts 1887, § 3, authorizing the term of sentence in such case to commence forthwith, or at the expiration of the term of sentence the convict may be serving at the time.

6. SAME—STATUTES—REPEAL.

Act No. 132, Pub. Acts 1887, § 3, which provides for the sentencing of a convict serving a term in state prison, is not inconsistent with, and hence is not repealed by, Act No. 118, Pub. Acts 1893, which revises and consolidates the laws relative to the state prison, and repeals all inconsistent acts.

Error to Jackson; Peck, J. Submitted February 4, 1897. Decided May 11, 1897.

Edward Huntley, William Curley, and William Boot were convicted of assault with intent to do great bodily harm less than murder, and sentenced to imprisonment for 10 years in the state prison at Jackson. Affirmed.

*Eugene Pringle*, for appellants.

*Elmer Kirkby*, Prosecuting Attorney (*Charles A. Blair*, of counsel), for the people.

LONG, C. J. The information in this cause charges that the respondents, on, to wit,—

"The 26th day of November, 1895, at the city of Jackson, in said Jackson county, they, the said Edward Huntley, William Curley, William Boot, and William Maloney, being then and there convicts imprisoned, for a term other than life, in the state prison at the city of Jackson, within said county, under and by the authority of the laws of the State of Michigan, with force and arms in and upon one Albert C. Northrup, then and there being, did make an assault, and him, the said Albert C. Northrup, then and there did beat, wound, and bruise, with intent him, the said Albert C. Northrup, then and there to kill and murder, and other injuries to him, the said Albert C. Northrup, then and there did, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the people of the State of Michigan."

To this information the respondents demurred. The demurrer was overruled, and the respondents thereafter filed pleas in abatement. The prosecuting attorney demurred to these pleas, and the demurrer was sustained. William Maloney asked for a separate trial, which was granted. Upon the trial of all the respondents, except Maloney, they were convicted. Sentence was pronounced against Edward Huntley upon the verdict of the jury, in part reciting:

"It appearing to the court, from the evidence adduced, that the said Edward Huntley was at the time said crime was committed, and now is, a convict confined in the state prison at Jackson, in said State, serving an unexpired sentence therein, imposed upon him by the recorder's court of the city of Detroit on the 12th day of April, A. D. 1888, for the period of 20 years from and including said day, and that the crime of which he is convicted in this cause was committed by him within said state prison: Therefore it is ordered and adjudged by the said court now here that the said Edward Huntley be confined in the state prison at Jackson, in this State, at hard labor, for the period of 10 years, to commence at the expiration of the term he was so serving under his said sentence by said recorder's court when the crime for which he is now sentenced was committed."

The former sentences of the other two respondents, Curley and Boot, it appears, would soon expire; and therefore the court sentenced each of them to be confined in the state prison at Jackson at hard labor for the period of 10 years from and including the day of sentence.

On the trial, the three respondents being tried together, the prosecution called George R. Stone as a witness, and, before he had given any testimony, the attorney for respondents objected to any testimony being given under the information, alleging that it did not charge any offense known to the laws of this State. This objection was overruled, and respondents' counsel excepted. Witnesses were sworn upon the part of the people, and also of the respondents, from which it appears that Edward Huntley was held as a convict in the state prison at

Jackson. The people then offered in evidence a *mitti-mus*. Counsel for respondents objected to the introduction of this, for the reason, as stated by him, that "it does not show a conviction for any crime known to the laws of this State." This *mittimus* shows the conviction of Huntley on April 12, 1888, on a trial before a jury, "with having, on the 27th day of March, 1888, committed the crime of burglary, being armed with a dangerous weapon, to wit, a pistol loaded with powder and balls, at the city of Detroit, Wayne county, Michigan." Evidence was also introduced showing that the information in that case was filed in the recorder's court of the city of Detroit; that respondent, Huntley, pleaded orally thereto, "Not guilty;" that he was the same Edward Huntley as the one on trial. The information was also produced and put in evidence, and charges substantially that—

"Mathew Monahan and Edward Huntley, late of said city of Detroit, in the county aforesaid, on the 27th day of March, 1888, at the said city of Detroit, at about the hour of 1 in the night-time of said day, with force and arms, the dwelling house of Edmund Austin, there situate, feloniously and burglariously did break and enter, with intent the personal property, goods, and chattels of him, the said Edmund Austin, in said dwelling house being found, then and there feloniously and burglariously to steal, take, and carry away; he, the said Edmund Austin, at the time of the breaking and entering aforesaid, being lawfully in said dwelling house, and they, the said Mathew Monahan and Edward Huntley, being then and there armed with a dangerous weapon, to wit, a pistol, loaded with powder and balls, contrary to the form of the statute in such case made and provided."

Other evidence was also offered on the part of the people showing that respondent Huntley took part at the time mentioned in the information in an assault within the state prison at Jackson upon Albert C. Northrup, and there was also evidence tending to show the intent with which the assault was committed, which, if believed by the jury, and the respondent was properly charged in the information, was sufficient to sustain the verdict.

After the conviction of Huntley, he moved in arrest of judgment, setting out:

1. That he has been prosecuted while serving a sentence other than for life, upon a previous conviction, in the state prison at Jackson, which sentence was not imposed upon him after he had served a second term in said prison.

2. That this respondent is at said prison placed in the class of convicts and entitled by law for allowances for good conduct or "good time;" and it is indefinite and uncertain when the term of his present sentence will expire.

Like motions were entered in behalf of respondents Curley and Boot, and the motions denied.

In the case of William Curley, like proceedings were had, and like testimony was offered to sustain the conviction. The information in the case of Curley recites substantially that—

"William Curley, late of said city of Detroit, on the 17th day of June, 1892, at said city of Detroit, in the county aforesaid, at about the hour of 10:35 in the night-time of said day, with force and arms, the dwelling house of Julius Stoll, there situate, feloniously and burglari-ously did break and enter, with intent the goods and chattels of him, the said Julius Stoll, in said dwelling house then and there being found, then and there feloni-ously and burglariously to steal, take, and carry away, no person lawfully therein being put in fear."

This conviction was on the 26th day of August, 1892, and he was sentenced to the state prison at Jackson for the period of five years from that date, as appears by the record. Respondent Boot was convicted in the county of Ottawa, August 24, 1894, of the crime of larceny from the person, and sentenced to imprisonment in the state prison at Jackson for three years from and including that day. In each of the cases it appeared that a *mittimus* was produced by the clerk of the prison, and that it was delivered to him by the officer in charge of each respondent at the time of reception at the prison. The introduction of each *mittimus* was objected to,

on the ground that it was neither a certified transcript from the minutes of the court, nor a warrant under the seal of the court, requiring the convict to be removed from the county jail to the state prison.

The first contention made by counsel for respondents is as to the sufficiency of the information under which they were convicted. The information does not state as to any one of the respondents a conviction or sentence of any court, or for any crime committed, except that it states that they were convicts, imprisoned for a term other than life in the state prison at the city of Jackson, within said county, under and by authority of the laws of the State of Michigan. It is contended that it was necessary to prove such convictions and sentences, and therefore necessary to state the same in the information, as any fact necessary to be proved to make the act complained of a crime is matter of substance in an indictment, and what is necessary to be proved must be alleged.

Section 64 of Act No. 118, Pub. Acts 1893, provides:

"Any convict now or hereafter confined in any prison for any term other than life, who, during the term of such confinement, shall commit any crime punishable under the laws of this State by imprisonment in such institution, shall be subject to the same punishment as if the crime had been committed at any other place or by a person not so confined."

Section 65 provides for the jurisdiction of the circuit court in which the prison is situated, and that the proceedings shall in all ways conform to the law and rules in cases of like offenses occurring elsewhere,—

"Except that the examination may be held in one of the offices of the penal institution where the crime is committed, at the option of the justice of the peace before whom the complaint may be made, and that the warrant shall be made in the ordinary form, shall be directed to the warden of such prison, and shall set forth that the accused is imprisoned in such prison under and by authority of the laws of the State of Michigan; and, further, that the convict so confined shall remain in the

custody of such warden, subject to the order of the circuit court of the county in which such prison is located."

We think the information was sufficient. It did set out that the respondents were properly and lawfully confined within the state prison. Section 65 prescribes what the warrant shall contain, and the information does contain all the essentials therein required to be set forth in the warrant. These sections add nothing to the penalties which the law had already pronounced. They make no new offense. They enable the court to obtain jurisdiction for the trial of those already under sentence, and imprisoned within the state prison. Before the passage of the statute, the courts were powerless to entertain or prosecute inquiries or take proceedings with reference to crimes committed within the state prison; and the purpose of the statute was to provide a mode for the conviction of offenses there committed. But counsel for respondents cites the case of *People* v. *Hamaker*, 92 Mich. 11, as supporting his contention that these facts must be alleged in the information. In that case the respondent was discharged by this court, for the reason that it did not appear that the convict he assisted to escape was lawfully held. The prosecution was had under section 9245, 2 How. Stat., which provides that—

"Every person who shall convey into any jail, prison, or like place of confinement any disguise, or any instrument, tool, weapon, or other thing adapted or useful to aid any prisoner in making his escape, with intent to facilitate the escape of any prisoner there lawfully committed or detained,   *   *   *.   shall be punished by imprisonment in the state prison," etc.

It will be noticed that this statute provides a punishment to any person who does any of these acts with intent to facilitate the escape of a prisoner *lawfully* committed or detained. In the statute under consideration there is an entire absence of any language to convey the inference that the legislature intended that the lawfulness of the conviction or detention should be a necessary prerequisite to a conviction. It simply has reference, as

before stated, to the manner of proceeding, and is designed to give to the court jurisdiction to punish persons confined within the state prison to the same extent and for like offenses as if committed by persons who are outside of the prison. In the *Hamaker Case* the information did not show that the person aided was lawfully committed. The commitment did not show that fact, and there was no evidence of that fact upon the trial.

But it is contended that Act No. 118, Pub. Acts 1893, is unconstitutional. The reasons for this claim are set out in the demurrer. The constitutionality of the act was attacked in *Fuller* v. *Attorney General*, 98 Mich. 96, and in *Attorney General* v. *Parsell*, 99 Mich. 381, but not upon the ground here claimed. The act was also before us in *Re Canfield*, 98 Mich. 644. In each case the act has been upheld. In its title it is:

"An act to revise and consolidate the laws relative to the state prison, to the state house of correction and branch of the state prison in the Upper Peninsula, and to the house of correction and reformatory at Ionia, and the government and discipline thereof, and to repeal all acts inconsistent therewith."

Section 32 provides for the punishment of persons aiding a prisoner to escape; section 48, for conveying persons convicted in any county to the state prison; and section 49, for the payment of fees therefor. Section 54 provides for the writ of *habeas corpus* to bring persons confined in the prison before a court for the purpose of giving testimony in criminal cases; section 60, for the auditing of the accounts of the warden by the auditor general. Section 64 provides for the punishment for crimes committed in the state prison by convicts confined therein; and section 65, for the mode of procedure in such cases. The general object and scope of the act are stated in the title. It is to consolidate the laws of these different prisons, and provide for the government and discipline thereof, and the different sections point out the manner in which its object is to be accomplished. The fact that it provides penalties

for violations does not render the act invalid. *Hartford Fire Ins. Co.* v. *Raymond*, 70 Mich. 485, 499, and cases there cited.

It is said, however, that the act prescribes cruel and unusual punishment. We think this assertion needs no refutation. The punishment is fixed by the act itself, and is in the same degree as though the crime were committed outside the prison walls.

But it is claimed that a prisoner may be twice punished for the same offense, as by section 40 he may be punished by the prison authorities, and by sections 64 and 65 he may be subject to trial, conviction, and further imprisonment. Section 40 was not intended to provide for the punishment of such crimes as those covered by sections 64 and 65. It was intended merely for the good government of the prison, and to aid the officers thereof to maintain discipline, while sections 64 and 65 were intended to provide punishment for crimes committed therein.

It is next contended that no valid sentences can be imposed upon the respondents, as they are now serving valid sentences, and it cannot be determined when their present sentences will expire, and when the new sentences will begin. The sentences of the respondents, except Edward Huntley, commenced at the day they were pronounced; so that no uncertainty exists as to time in their cases. In reference to respondent Huntley, his sentence is to begin at the expiration of his present term. He was first sentenced for the period of 20 years from and including the 12th day of April, 1888. While it is not certain when this first term will expire, as he may gain time by good behavior, yet it is certain, whenever his first term does expire, his new sentence will begin. In *Re Bloom*, 53 Mich. 597, it was said: "We have no statute providing for such sentences, and, in the absence of statutory provision therefor, the question presented is not without difficulty." In *Re Lamphere*, 61 Mich. 105, the same difficulty was encountered, and it was said

in reference to cumulative sentences: "As we have no statutes on the subject, we must, in our opinion, wait until the legislature shall see fit to devise adequate means to avoid these difficulties." This decision was rendered at the April term, 1886. At the session of the legislature in 1887, Act No. 132, Pub. Acts 1887, was passed. Sections 1 and 2 of that act are substantially the same as sections 64 and 65 of the act of 1893, above quoted. Section 3 of the act of 1887 provides:

"If, on the trial of any such cause, the accused shall be found guilty, the term of sentence imposed for such offense may, at the discretion of the court pronouncing judgment in such cause, commence forthwith, or at the expiration of the term or terms of sentence such accused convict may be serving at the time of the commission of the offense for which he may be committed, or, if such term or terms shall have expired at the time of such sentence, then at the time fixed therein."

Undoubtedly, the legislature had in mind, at the time this act was passed, the difficulties suggested in *Re Lamphere*. Under this statute there can be no doubt of the power of the court to pronounce the sentence upon the respondents.

But it is contended by counsel for respondents that this section of the act of 1887 was repealed by Act No. 118, Pub. Acts 1893. The act of 1893 was a revision and consolidation of the former acts, and to repeal all acts inconsistent therewith. While the general rule is that statutes and parts of statutes omitted from a revision are to be considered annulled, and not to be revived by construction, yet there are many exceptions to this rule. A revisal repealing all acts repugnant to the provisions thereof cannot affect statutes which are omitted, and which are not repugnant to its provisions. *State* v. *Pollard*, 6 R. I. 290. The rule of implied repeal is clearly inapplicable also where the revising statute declares what effect it is intended to have upon the former law, as where it declares that it shall operate as a repeal of such provisions of earlier acts as are inconsistent with

it, which is regarded as a declaration that it shall repeal only such provisions, and leave unaffected such as are not inconsistent. End. Interp. Stat. § 203; *Patterson* v. *Tatum*, 3 Sawy. 164; *Lewis* v. *Stout*, 22 Wis. 234; *Gaston* v. *Merriam*, 33 Minn. 271. Applying these rules to the present case, it must be held that section 3 of the act of 1887 was not repealed. The court therefore had power to impose the sentence, commencing after the former sentence shall have expired.

We find no error in the record in any of the cases, and the judgment below must be affirmed.

The other Justices concurred.