*525
 
 OPINION OF THE COURT
 

 Wesley, J.
 

 The primary issue in each of these appeals is whether the Double Jeopardy Clauses of the State and Federal Constitutions bar the criminal prosecution of an inmate who has previously been the subject of internal prison disciplinary sanction. We conclude that the disciplinary sanctions imposed do not constitute "criminal punishment” triggering double jeopardy protections. Thus, the claims that the criminal prosecutions were barred under double jeopardy principles were correctly rejected.
 

 I.
 

 People v Vasquez
 

 On February 26, 1994, while incarcerated at the Elmira Correctional Facility, defendant Vasquez was searched by prison guards after setting off a metal detector during a routine walk-through. During the search, the guards saw defendant throw a metal object into a nearby laundry basket. The object was a sharpened eight-inch piece of metal, commonly referred to as a "shank.” At the time, defendant was serving an indeterminate sentence of 5 to 10 years for criminal possession of a controlled substance and a concurrent indeterminate sentence of 2
 
 [1]
 
 /2 to 5 years for criminal possession of a weapon. Defendant was charged by prison officials with a Tier III violation of the standards of inmate behavior (7 NYCRR 270.2).
 
 [1]
 
 Pursuant to 7 NYCRR 270.3, a Superintendent’s hearing was held on or about March 23, 1994, and defendant was found guilty. By decision dated March 26, 1994, the Hearing Officer imposed a disciplinary penalty of 180 days in the Special Housing Unit and six months loss of privileges and good time. This penalty was ultimately modified by the Southport Disciplinary Review Committee to 145 days in the Special Housing Unit.
 

 On April 14, 1994, defendant was indicted by the Chemung County Grand Jury and charged with one count of promoting prison contraband, a class D felony (Penal Law § 205.25). By omnibus motion dated April 29, 1994, defendant moved to dismiss the charge on double jeopardy grounds. The motion was denied by the trial court. Defendant was convicted upon a jury trial and ultimately sentenced as a second felony offender
 
 *526
 
 to an indeterminate consecutive term of 3 to 6 years’ imprisonment. The Appellate Division affirmed. A Judge of this Court granted defendant leave to appeal.
 

 Matter of Cordero
 

 The charges in Cordero’s case also involved a shank, this one having been used to stab a fellow inmate at the Coxsackie Correctional Facility on March 26, 1995. Prison officials charged Cordero with four violations of the standards of inmate behavior (7 NYCRR 270.2): assault on an inmate (rule 100.10); fighting (rule 100.13); possession of a weapon (rule 113.10); and refusing to obey a direct order (rule 106.10). After a Tier III disciplinary hearing, Cordero was found guilty of all specifications of misconduct. The Hearing Officer recommended that Cordero receive 48 months in a Special Housing Unit, loss of privileges and 12 months’ loss of good time. On administrative appeal, Cordero’s placement in the Special Housing Unit was reduced to 24 months, and was further reduced to 18 months by the Southport Disciplinary Review Committee.
 

 One week after the decision on the disciplinary hearing, Cordero was indicted by the Greene County Grand Jury and charged with two counts of second degree assault (Penal Law § 120.05 [2], [7]), one count of third degree criminal possession of a weapon (Penal Law § 265.02 [1]), and one count of first degree promoting prison contraband (Penal Law § 205.25 [2]). On September 12, 1995, Cordero pleaded guilty to the first count of second degree assault in full satisfaction of all charges, subject to his right to challenge the proceedings on double jeopardy grounds. The trial court held a hearing to determine the merits of Cordero’s double jeopardy claim on October 10, 1995. Despite finding that the disciplinary action constituted punishment, the court held that the Double Jeopardy Clause did not bar criminal prosecution of Cordero.
 

 Thereafter, Cordero commenced a CPLR article 78 proceeding in the nature of a writ of prohibition in the Appellate Division, arguing that his criminal prosecution should be prohibited on double jeopardy grounds under both the Federal and State Constitutions and CPL article 40. The Appellate Division dismissed the petition. With respect to the statutory claim, the Court held that the double jeopardy protections afforded by article 40 are not triggered by an administrative action. With respect to the constitutional claim, the Court noted that it has consistently held that a prior disciplinary proceeding does not bar a subsequent criminal conviction. The Appellate Division
 
 *527
 
 further rejected petitioner’s argument that the Supreme Court’s decision in
 
 United States v Halper
 
 (490 US 435) dictated a contrary result. The Court relied on the Second Circuit decision in
 
 United States v Hernandez-Fundora
 
 (58 F3d 802, 806) which rejected the same argument. Cordero appeals to this Court as of right, asserting a substantial constitutional question.
 

 II.
 

 The Double Jeopardy Clause of the Fifth Amendment provides "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb” (US Const Fifth Amend). This Federal constitutional protection is made applicable to the States by virtue of incorporation through the Fourteenth Amendment
 
 (see, Benton v Maryland,
 
 395 US 784;
 
 see also,
 
 NY Const, art I, § 6).
 
 [2]
 
 The Double Jeopardy Clause prohibits both multiple prosecutions for the same offense (following either conviction or acquittal) and multiple punishments for the same offense
 
 (United States v Halper, supra,
 
 490 US, at 440;
 
 Helvering v Mitchell,
 
 303 US 391, 399). It is the latter prong that is implicated in this case; Cordero and Vasquez contend that, having been previously subject to prison disciplinary punishment, they may not be made to suffer again for the same conduct through formal criminal proceedings.
 

 The Double Jeopardy Clause has deep common-law roots,
 
 [3]
 
 which must be considered in properly construing its boundaries and limitations
 
 (United States v DiFrancesco,
 
 449 US 117,
 
 *528
 
 133-134). Historically, the primary function of the Double Jeopardy Clause has been to bar consecutive criminal prosecutions stemming from the same conduct
 
 (Breed v Jones,
 
 421 US 519, 528;
 
 United States ex rel. Marcus v Hess,
 
 317 US 537, 548-549;
 
 Helvering v Mitchell, supra; People v Goodwin,
 
 18 Johns 187, 202). Indeed, it was not until the Supreme Court’s decision in
 
 Helvering v Mitchell (supra)
 
 that courts in this country began to consider the argument that double jeopardy protections may be extended to proceedings which are not nominally criminal. Notably, prior to its 1989 decision in
 
 United States v Halper (supra),
 
 the Supreme Court had never held that double jeopardy protections extended to a noncriminal proceeding
 
 (see, Department of Revenue of Mont. v Kurth Ranch,
 
 511 US 767, 800 [Scalia, J., dissenting]).
 

 In
 
 Helvering v Mitchell (supra),
 
 the Supreme Court considered whether the assessment of a tax penalty for filing a fraudulent return was barred on double jeopardy grounds where the taxpayer had previously been acquitted of criminal charges for willfully attempting to evade income taxes. The Court looked beyond whether the proceedings were traditionally classified as criminal or civil, and instead focused on whether the sanctions involved were remedial rather than punitive. The Court stressed, however, that the fundamental question was whether the tax penalty amounted to
 
 criminal
 
 punishment, "for the double jeopardy clause prohibits merely punishing twice, or attempting a second time to punish criminally, for the same offense. The question for decision is thus whether [the taxing statute] imposes a criminal sanction”
 
 (Helvering v Mitchell, supra,
 
 303 US, at 399). A decade later, in
 
 United States ex rel. Marcus v Hess (supra,
 
 317 US, at 548-549), the Court noted that criminal punishment, for double jeopardy purposes, means punishment designed "to vindicate public justice.”
 

 While the argument does not appear to have been made with great frequency prior to
 
 Helvering,
 
 courts considering the question had held that prison disciplinary action did not trigger the protections of the Double Jeopardy Clause
 
 (State v Cahill,
 
 196 Iowa 486, 194 NW 191;
 
 People v Huntley,
 
 112 Mich 569, 71 NW 178). Nothing in
 
 Helvering
 
 suggests a contrary result, and in the years after it was decided, courts continued to adhere to this general proposition
 
 (see, Hutchison v United States,
 
 450 F2d 930;
 
 Patterson v United States,
 
 183 F2d 327;
 
 Pagliaro v Cox,
 
 143 F2d 900;
 
 State v Mead,
 
 130 Conn 106, 32 A2d 273;
 
 Ex parte Kirk,
 
 96 Okla Cr 272, 252 P2d 1032).
 

 In
 
 Matter of Escobar v Roberts
 
 (29 NY2d 594,
 
 mot to amend remittitur granted
 
 29 NY2d 709), this Court first considered
 
 *529
 
 the issue, and reached the same conclusion as the courts cited above. Our affirmance and rejection of defendant’s argument in that case silently implied what we today make explicit: the Double Jeopardy Clause does not bar criminal prosecution of a prison inmate simply because the inmate was previously subjected to internal prison disciplinary action for the same conduct.
 

 Prison disciplinary action is not designed to "vindicate public justice,” but rather to further the separate and important public interest in maintaining prison order and safety. In reaching this conclusion, we recognize that the disciplinary sanctions imposed in these cases did, in some sense, constitute a form of punishment. This does not, however, inexorably lead to the conclusion that these sanctions constitute "punishment” within the meaning of double jeopardy jurisprudence.
 

 As the Second Circuit recently observed in
 
 United States v Hernandez-Fundora (supra,
 
 58 F3d, at 806), "[p]unitive interests and remedial interests * * * are nowhere so tightly intertwined as in the prison setting, where the government’s remedial interest is to maintain order and to prevent violent altercations among a population of criminals.” Prisoners, by virtue of their status (resulting from a prior violation of the Penal Law) are subject not only to criminal laws, aimed at vindicating societal interests, but also to a whole array of internal prison rules and regulations, which serve the separate, legitimate and important institutional purposes of preserving prison order and safety. A prisoner who commits a crime in prison breaks both sets of rules, and may thus be sanctioned both internally to carry out the goals of the penal institution, and through criminal prosecution to vindicate public justice, so long as the disciplinary sanction does not stray so far beyond the bounds of the separate State interest in maintaining prison order and safety that the sanction can only be viewed as constituting criminal punishment.
 

 Both appellants contend that the Supreme Court’s decision in
 
 United States v Halper
 
 (490 US 435, supra) controls our analysis with respect to where legitimate prison discipline crosses over into criminal punishment for double jeopardy purposes.
 
 [4]
 
 Appellants urge that, under
 
 Halper,
 
 the penalties imposed upon them are so disproportionate that they must be
 
 *530
 
 viewed as constituting essentially criminal punishment.
 
 [5]
 
 We are not persuaded.
 

 In
 
 Halper,
 
 the Court considered whether a civil monetary penalty constituted criminal punishment. Halper had filed 65 false claims for reimbursement for medical services. The overpayments amounted to $585
 
 (United States v Halper, supra,
 
 at 437). Following his conviction, Halper was fined $5,000 and sentenced to two years in prison. The Government then commenced a civil action against Halper under the Civil False Claims Act (31 USC §§ 3729-3731) based on the criminal convictions. The "civil” penalties available under the False Claims Act amounted to $2,000 for each false claim. The Court held that because the civil penalty was "so extreme and so divorced from the Government’s damages and expenses” it constituted punishment triggering double jeopardy protection
 
 (United States v Halper, supra,
 
 at 442).
 

 In reaching this conclusion, the Court first determined that the Government’s legitimate noncriminal objective was to seek remuneration. Given this purpose, the Court had no trouble deciding that the fine at issue was so disproportionate to that purpose that it also constituted criminal punishment. The Government’s actual damages including the overpayments and litigation costs in the original proceeding were estimated at $16,000, while the defendant faced a fine of over $130,000.
 

 In
 
 Halper,
 
 a straightforward economic balancing was not only feasible but simple, since both the Government’s interests and the amount of the penalty could be easily quantified. The Court was careful to note that its analysis was "a rule for the rare case * * * where a fixed-penalty provision subjects a prolific but small-gauge offender to a sanction overwhelmingly disproportionate to the damages he has caused”
 
 (United States v Halper, supra,
 
 at 448-449).
 

 In
 
 United States v Ursery
 
 (518 US —, 116 S Ct 2135) the Supreme Court recognized that, in general, the State interests and the penalties imposed in a particular case are not easily quantified.
 
 Ursery
 
 involved two civil drug forfeiture statutes that required forfeiture of property used by the defendants to facilitate the processing and distribution of a controlled
 
 *531
 
 substance or to launder money obtained from the sale of drugs
 
 (supra,
 
 518 US, at —, 116 S Ct, at 2138-2139). In each case, the circuit courts had held that the forfeiture statutes ran afoul of the Double Jeopardy Clause because they constituted punishment under the
 
 Halper
 
 analysis
 
 (id.).
 
 The Supreme Court rejected the
 
 Halper
 
 analysis in civil forfeiture cases. The Court noted the long history of parallel in rem civil forfeiture actions and criminal proceedings based on the same conduct
 
 (supra,
 
 518 US, at —, 116 S Ct, at 2140). The Court further noted that in civil forfeiture cases it had always employed a two-stage analytical framework. First, the Court reviewed Congress’ intent — was the statute intended to serve as a remedial civil sanction. That determination was predicated upon several findings: (1) the historic view of the proceedings; (2) the scope of the seizure compared to the criminal conduct in question; and (3) the remedial goals of the civil proceeding. Second, the Court determined whether the scheme was so punitive in purpose or effect as to negate Congress’ intent to establish a civil remedy
 
 (supra,
 
 518 US, at —, 116 S Ct, at 2141).
 

 The Court noted that
 
 Halper
 
 was a "case specific” inquiry and was limited to civil penalties — fines
 
 (supra,
 
 518 US, at —, 116 S Ct, at 2144). The Court focused on the distinct difference between forfeitures and fines. While fines serve a remedial/ reimbursement purpose,
 

 "[forfeitures serve a variety of purposes, but are designed primarily to confiscate property used in violation of the law, and to require disgorgement of the fruits of illegal conduct. Though it may be possible to quantify the values of the property forfeited, it is virtually impossible to quantify, even approximately, the nonpunitive purposes served by a particular civil forfeiture. Hence, it is practically difficult to determine whether a particular forfeiture bears no rational relationship to the nonpunitive purposes of that forfeiture. Quite simply, the case-by-case balancing test set forth in
 
 Halper,
 
 in which a court must compare the harm suffered by the Government against the size of the penalty imposed, is inapplicable to civil forfeiture.”
 
 (United States v Ursery, supra,
 
 518 US, at —, 116 S Ct, at 2145.)
 

 We, likewise, reject the
 
 Halper
 
 balancing test in circumstances like the two instant appeals. As in
 
 Ursery,
 
 it is virtu
 
 *532
 
 ally impossible to quantify the nonpunitive purposes served by the prison disciplinary sanctions at issue in these cases. Rather than employ the
 
 Halper
 
 balancing test,
 
 Ursery
 
 suggests that the inquiry is more properly directed at whether these disciplinary sanctions are intended to constitute criminal punishment, and, assuming they are not, whether they are so grossly unrelated to the noncriminal governmental objectives at stake in a prison environment that they may only be viewed as criminal punishment.
 

 With respect to the first inquiry, we are satisfied that prison disciplinary rules are intended to serve legitimate noncriminal objectives. Prison disciplinary proceedings have long been viewed in this State, and in many other States, as civil in nature
 
 (Matter of Escobar v Roberts,
 
 29 NY2d 709,
 
 supra; Garrity v Fiedler,
 
 41 F3d 1150, 1153;
 
 Commonwealth v Brooks,
 
 330 Pa Super 355, 362, 479 A2d 589, 593;
 
 State v Mead, supra,
 
 130 Conn, at 112, 32 A2d, at 276;
 
 State v Cahill,
 
 196 Iowa 486, 194 NW 191,
 
 supra; People v Huntley,
 
 112 Mich 569, 71 NW 178,
 
 supra).
 
 The scope of conduct covered by the standards of inmate behavior is far broader than conduct subject to criminal sanctions under the Penal Law (e.g., refusing to obey a direct order [rule 106.10]). That such rules are necessary to the safe, orderly and effective functioning of prisons seems to us so fundamental as to require no further elaboration.
 

 With respect to the second inquiry, we note again that prison disciplinary rules serve the noncriminal goals of maintaining prison safety (for inmates and corrections personnel), discipline and order. This Court must afford deference to the decisions of the Legislature and prison authorities as to what discipline is necessary and proper to serve these important institutional interests
 
 (United States v Newby, supra,
 
 11 F3d, at 1146). While sanctions do have a deterrent effect, that deterrent effect is aimed exclusively at deterring conduct within the prison setting. Neither loss of good-time credits and other special privileges nor placement in a Special Housing Unit extend the period of incarceration originally imposed. The sanctions are aimed exclusively at the terms and conditions of the sentence being served by the inmate.
 
 [6]
 
 Thus, we hold that the disciplinary sanctions imposed upon appellants do not con
 
 *533
 
 stitute criminal punishment triggering double jeopardy protections. Assuming without deciding that, under rare circumstances, a prison disciplinary sentence might be so harsh and extreme as to invoke double jeopardy protections, that is not the case here.
 

 III.
 

 Appellants’ remaining contentions do not merit much further discussion. Both urge that, even if their criminal prosecutions are not barred under constitutional double jeopardy principles, they are barred by the statutory protections afforded by CPL article 40. They characterize article 40 as expanding double jeopardy protections. CPL 40.20 (1) provides that "[a] person may not be twice prosecuted for the same offense.” CPL 40.30 defines a "previous prosecution”.* *****
 
 [7]
 

 While CPL 40.20 and 40.30 do afford additional protections beyond that which the dual sovereign doctrine would require
 
 (Matter of Booth v Clary,
 
 83 NY2d 675), that aspect of the Double Jeopardy Clause is not implicated here. Article 40 does not expand double jeopardy protections in any way that is relevant to these cases. Indeed, as the Appellate Division noted in its decision in
 
 Matter of Cordero v Lalor
 
 (227 AD2d 848, 848-849) the definition of "previous prosecution” for article 40 purposes clearly excludes a prison disciplinary proceeding as a basis for a statutory double jeopardy claim (CPL 40.30 [1]),
 
 *534
 
 since the disciplinary proceeding is not commenced with the filing of an accusatory instrument in a court
 
 (id.).
 

 Finally, in the absence of any objection to the trial court’s failure to stenographically record the jury voir dire, defendant’s Vasquez’s contention that reversal is required under Judiciary Law § 295 is not preserved for our review (CPL 470.05).
 

 Accordingly, the order of the Appellate Division in
 
 People v Vasquez
 
 and the judgment of the Appellate Division in
 
 Matter of Cordero
 
 should be affirmed, without costs.
 

 Chief Judge Kaye and Judges Titone, Bellacosa, Smith, Levine and Ciparick concur.
 

 In
 
 People v Vasquez:
 
 Order affirmed.
 

 In
 
 Matter of Cordero v Lalor:
 
 Judgment affirmed, without costs.
 

 [1]
 

 . The record does not reflect the specific section of the standards of inmate behavior that Vasquez violated.
 

 [2]
 

 . Since no claim has been made that the State provision affords greater protection than the Federal Double Jeopardy Clause, Federal law controls our analysis.
 

 [3]
 

 . Unlike many other protections embodied in our Federal Constitution, the Double Jeopardy Clause cannot be traced directly to the Magna Charta or the English Bill of Rights of 1689. It does, however, have antecedents in ancient Greek, Roman, Hebrew and Ecclesiastical Law. Our constitutional provision is most directly rooted in the English commonlaw pleas of
 
 autrefois acquit
 
 and
 
 autrefois convict,
 
 which may have developed as early as the thirteenth century, and were firmly established by the seventeenth and eighteenth centuries, as shown by the works of Coke and Blackstone. These pleas were applicable only in criminal proceedings (res judicata being the appropriate plea in civil proceedings) and were analogous to the double jeopardy limitation on multiple prosecutions for the same offense
 
 (see,
 
 Mack,
 
 Double Jeopardy
 
 — Civil
 
 Forfeitures and Criminal Punishment: Who Determines What Punishments Fit the Crime,
 
 19 Seattle U L Rev 217, 220-221 [1996]; Sorrow,
 
 The New Al Capone Laws and the Double Jeopardy Implications of Taxing Illegal Drugs,
 
 4 S Cal Interdisciplinary LJ 323, 329-330 [1995]; McAninch,
 
 Unfolding the Law of Double Jeopardy
 
 , 44 SC L Rev 411, 414-415 [1993]).
 

 [4]
 

 . We note the many appellate decisions which have addressed this issue since
 
 Halper
 
 was decided, all of which have concluded that prison disciplinary sanctions do not trigger the protections of the Double Jeopardy Clause
 
 *530
 
 (see,
 
 e.g., United States v Reyes,
 
 87 F3d 676 [5th Cir 1996];
 
 United States v Hernandez-Fundora, supra; United States v Newby,
 
 11 F3d 1143 [3d Cir 1993];
 
 Commonwealth v Forte,
 
 423 Mass 672, 671 NE2d 1218 [1996];
 
 State v Harlin,
 
 260 Kan 881, 925 P2d 1149 [1996];
 
 State v O’Connor,
 
 681 A2d 475 [Me 1996]).
 

 [5]
 

 . Cordero restricts his challenge to the sanction which required that he be placed in the Special Housing Unit.
 

 [6]
 

 . Cordero argues that the disproportionality test of
 
 Halper
 
 can be easily applied in this case by employing the guidelines set forth by the Commissioner for disciplinary dispositions. Cordero’s argument (which would prove fatal to the claim of Vasquez since his Special Housing Unit sanction was within the guidelines) overlooks several key factors. One, the guidelines are
 
 *533
 
 nothing more than that — they do not bind the Hearing Officer; two, the record tells us nothing of Cordero’s prior disciplinary background. Cordero apparently contested the Special Housing Unit sanction in light of his prior background and the facts of this case and received two reductions in the sanction (see, 7 NYCRR 254.9). While courts can be called upon to examine the severity of the sanction in an article 78 proceeding
 
 (Matter of Pell v Board of Educ.,
 
 34 NY2d 222;
 
 Matter of Massop v LeFevre,
 
 127 Misc 2d 910), that analysis is separate and distinct from our efforts here. Our task is to identify the nature of the proceeding and the sanction and juxtapose it to the rational State purposes of maintaining order, safety and discipline in correctional institutions.
 

 [7]
 

 . The statute provides that:
 

 "[A] person 'is prosecuted’ for an offense, within the meaning of section 40.20, when he is charged therewith by an accusatory instrument filed in a court of this state or of any jurisdiction within the United States, and when the action either:
 

 "(a) Terminates in a conviction upon a plea of guilty; or
 

 "(b) Proceeds to the trial stage and a jury has been impaneled and sworn or, in the case of a trial by the court without a jury, a witness is sworn” (CPL 40.30 [1]).