OPINION OF THE COURT
Miriam R. Best, J.
For the reasons that follow, defendant’s motion to dismiss the indictment for a constitutional and statutory double jeopardy violation is denied.
Procedural History
Defendant is charged with aggravated unlicensed operation of a motor vehicle in the first, second and third degrees (Vehicle and Traffic Law § 511 [3] [a] [ii]; [2] [a] [iv]; [1] [a]). These charges arise out of an incident that allegedly occurred on November 20, 2013, at approximately 1:49 p.m., at the corner of Sampson and Brinsmade Avenues in the Bronx, when Police Officer Albert Garcia observed defendant driving a gray Jeep Cherokee that had no front license plate and whose rear license plate had a cover obstructing the name of the issuing state (decision of Sept. 2, 2014, slip op at 1-2). Defendant allegedly told Garcia that he believed his license was suspended (id. at 2). Defendant was arrested and charged with Vehicle and Traffic Law § 511 (3) (a) (ii); (2) (a) (iv) and (1) (a). He was also given traffic tickets for the covered plate (Vehicle and Traffic Law § 402 [1]) and unlicensed operation of a motor vehicle (Vehicle and Traffic Law § 509 [1]) (decision of Sept. 2, 2014, slip op at 2; defendant’s exhibit A [ticket numbers AAW7112873, AAW7112884]).
Defendant was arraigned in Criminal Court, Bronx County, on November 21, 2013. The complaint alleged that defendant had at least 10 suspensions on 10 dates; in fact, when Garcia ran the client ID number that appeared on defendant’s New York State identification card through a police computer connected to the New York State Department of Motor Vehicles (DMV) database, the computer showed that defendant’s license was suspended 57 times, specifically, 50 suspensions on 13 dates (decision of Sept. 2, 2014 slip op at 2). Defendant waived his *962 right to testify before the grand jury, which returned the indictment on December 12, 2013 (Scolavino aff ¶¶ 9-11).
On April 14, 2014, the New York State Department of Motor Vehicles sent defendant a letter entitled “Notice of Default Conviction and License Suspension.” The letter states, in relevant part:
“Your driver license, or privilege to drive in New York State, was suspended on 02/10/14 for failure to answer the traffic ticket you received on 11/20/13 in Bronx for unlicensed GT 60 days.
“On 4/14/14 you were convicted of this offense because you failed to answer the ticket.” (Defendant’s exhibit B.) It is undisputed that this proceeding occurred in the Traffic Violations Bureau (TVB). To clear the suspension of his license defendant was required to pay a fine, surcharges and fees totaling $528 to the Commissioner of Motor Vehicles {id.).
On August 28, 2014, this court held a combined Dunaway/ Huntley hearing on defendant’s motion to suppress statement evidence. On September 2, this court denied the motion. This motion followed.
The Parties’ Contentions
Defendant now moves for an order dismissing the indictment, pursuant to United States Constitution, Amendment y New York State Constitution, article I, § 6, and CPL 40.20. With respect to the US and New York State Constitutions, defendant argues that because unlicensed operation under Vehicle and Traffic Law § 509 (1) is a lesser included offense of each of the counts of aggravated unlicensed operation charged in the indictment, his default conviction for the traffic infraction of unlicensed operation on April 14, 2014, bars a subsequent trial on the felony and misdemeanor counts. With respect to CPL 40.20, defendant, relying on Vehicle and Traffic Law § 1806-a, argues that the traffic ticket for Vehicle and Traffic Law § 509 (1) resulted in a conviction upon a plea of guilty for the same criminal transaction that is charged in the indictment, and that none of the statutory exceptions provided for in CPL 40.20 applies in this case.
The People oppose defendant’s motion, arguing that neither federal nor state double jeopardy principles bar his trial for aggravated unlicensed operation after his conviction by default for unlicensed operation in the TVB. The People do not address defendant’s lesser included offense claim directly, but argue that each count of aggravated unlicensed operation of a motor vehi *963 ele “requires proof of a fact of which the Vehicle and Traffic Law § 509 does not, and vice versa” (Scolavino mem at 8). With respect to CPL 40.20, the People argue that the traffic infraction of unlicensed operation is designed to prevent a very different type of harm from that addressed by the crimes of driving with a suspended or revoked license. They also argue that because the TVB lacks jurisdiction over misdemeanors and felonies, defendant has not been “previously prosecuted” within the meaning of CPL 40.30.
In a reply brief, defendant urges the court not to view the default conviction as a civil penalty, although he concedes (reply mem at 7) that “there is an ostensible basis” for doing so. Rather, he argues that the default conviction was a previous prosecution requiring dismissal of this indictment. He also makes an equal protection argument and challenges the People’s statutory analysis.
Analysis
The Double Jeopardy Clause of the Fifth Amendment of the US Constitution provides that no “person [shall] be subject for the same offence to be twice put in jeopardy of life or limb.” (Hudson v United States, 522 US 93, 98 [1997].) This federal protection is applicable to the states through the Due Process Clause of the Fourteenth Amendment (Illinois v Vitale, 447 US 410, 415 [1980]). As the Court explained, “[t]he Clause protects only against the imposition of multiple criminal punishments for the same offense, and then only when such occurs in successive proceedings.” (Hudson v United States, 522 US at 99 [citation omitted].) The Double Jeopardy Clause has been held to consist of three separate guarantees: (1) “It protects against a second prosecution for the same offense after acquittal. [2] It protects against a second prosecution for the same offense after conviction. [3] And it protects against multiple punishments for the same offense.” (North Carolina v Pearce, 395 US 711, 717 [1969]; Illinois v Vitale, 447 US at 415.) The principal test for determining whether two offenses are the same for double jeopardy purposes is the “same elements” test of Blockburger v United States (284 US 299 [1932]). “The same-elements test . . . inquires whether each offense contains an element not contained in the other; if not, they are the ‘same offence’ and double jeopardy bars additional punishment and successive prosecution.” (United States v Dixon, 509 US 688, 696 [1993] [overruling the “same conduct” test of Grady v Corbin (495 US 508 *964 [1990])].) A lesser included offense is the “same offense” for double jeopardy purposes (Brown v Ohio, 432 US 161, 169 [1977]; People v Biggs, 1 NY3d 225, 230 [2003]; People v Wood, 95 NY2d 509, 514 [2000]).
“[I]n New York, protection against double jeopardy is statutory as well as constitutional.” (Matter of Polito v Walsh, 8 NY3d 683, 686 [2007].) The New York State Constitution provides that “[n]o person shall be subject to be twice put in jeopardy for the same offense” (NY Const, art I, § 6). The double jeopardy statute, CPL 40.20, has two provisions. CPL 40.20 (1) provides that “[a] person may not be twice prosecuted for the same offense.” An offense is defined in CPL 40.10 (1): “An ‘offense’ is committed whenever any conduct is performed which violates a statutory provision defining an offense; and when the same conduct or criminal transaction violates two or more such statutory provisions each such violation constitutes a separate and distinct offense.” “CPL 40.20 (1) provides, at most, no more double jeopardy protection than the [Federal] and [State] Constitutions do” (Matter of Polito, 8 NY3d at 690). Broader protections against double jeopardy are provided by CPL 40.20 (2) (id.). Plainly, a lesser included offense must also be “the same offense” for purposes of state double jeopardy protection.
Although the People do not address defendant’s claim that unlicensed operation of a motor vehicle is a lesser included offense of the felony and misdemeanors for which he was indicted, defendant is correct on this point. (People v Pacer, 6 NY3d 504, 507, 513 [2006] [Appellate Division correctly held that trial court should have granted defendant’s application to charge Vehicle and Traffic Law § 509 (1) as lesser included offense of Vehicle and Traffic Law § 511 (3) (a) because “a reasonable juror could have found that defendant drove without a license yet lacked knowledge or a reason to know that his New York license had been revoked”]; People v Gribben, 164 AD2d 944, 945 [2d Dept 1990] [“As conceded by the People, driving without a license under Vehicle and Traffic Law § 509 (1) is a lesser included offense of aggravated unlicensed operation of a motor vehicle in the first degree under Vehicle and Traffic Law § 511 (3) ”].) Accordingly, if defendant was prosecuted for the Vehicle and Traffic Law § 509 (1) traffic infraction when his license was suspended and the fine was imposed on April 14, 2014, then this court would be constrained to dismiss this indictment under the Federal and State Constitutions and CPL 40.20 (1). For the reasons that follow, however, defendant was not prosecuted *965 within the meaning of the double jeopardy rules, and his motion is denied.
Defendant was Not Previously Prosecuted in This Case
Defendant’s claims rest on his assertion that he was prosecuted by a simplified traffic information for violating Vehicle and Traffic Law § 509 (1) “when he was convicted by plea of guilty based upon his failure to answer on” April 14, 2014 (Spivak aff ¶ 19). He points first to CPL 40.30 (1), which provides, in relevant part, that a person “is prosecuted” for an offense within the meaning of CPL 40.20 when he is charged with an offense by an accusatory instrument filed in a court of this state or of any jurisdiction within the United States, and when the action either “terminates in a conviction upon a plea of guilty” or proceeds to a trial and the impaneling and swearing of a jury or the swearing of a witness in a bench trial. He next quotes a portion of Vehicle and Traffic Law § 1806-a (1), which provides that
“[i]n the event a person charged with a traffic infraction does not answer within the time specified, the court having jurisdiction, other than a court in a city over one million population may, in addition to any other action authorized by law, enter a plea of guilty on behalf of the defendant and render a default judgment of a fine determined by the court within the amount authorized by law. Any judgment entered pursuant to default shall be civil in nature, but shall be treated as a conviction for the purposes of this section.”[1]
Defendant claims that “the Traffic Violations Bureau had jurisdiction over” him (Spivak aff ¶ 23) and that “[t]he New York Traffic Violations Bureau is a ‘court’ within the meaning of [CPL] 40.30” (reply mem at 15 n 1). Relying on Matter of Booth v Clary (83 NY2d 675 [1994]), Hill v Eppolito (196 Misc 2d 616 [Sup Ct, Madison County 2003], affd 5 AD3d 854 [3d Dept 2004]), and Prentis v Atlantic Coast Line Co. (211 US 210 [1908]), defendant claims that the “adjudication of a summons for VT.L section 509 is judicial in nature, thus making it functionally indistinguishable from a prosecution for the same charge in a local criminal court” (reply mem at 16 n 1). For the reasons that follow, these arguments fail.
*966 CPL 10.10 provides that the criminal courts of this state are comprised of the superior courts and the local criminal courts. Superior courts include the supreme court and a county court. Local criminal courts include a district court, the New York City criminal court, a city court, a town court, a village court, a supreme court justice sitting as a local criminal court or a county judge sitting as a local criminal court (CPL 10.10 [2] [a]-[b], [3] [a]-[g]). Plainly, the TVB is not enumerated as a court in CPL 10.10.
Moreover, while traffic infractions were previously heard in criminal courts, the legislative enactment, in 1969, of article 2-A of the Vehicle and Traffic Law specifically authorized administrative adjudication of traffic infractions in cities with a population of over one million people.[2] At that time, “[a]n explicit restriction was imposed that ‘no penalty . . . shall include imprisonment’. The Legislature also discontinued treating such infractions as misdemeanors for procedural purposes” (Matter of Rosenthal v Hartnett, 36 NY2d 269, 271-272 [1975] [citation omitted]). In Rosenthal, the Court of Appeals had to determine “whether the Legislature may constitutionally authorize administrative rather than judicial adjudication of traffic infractions and as an incident thereto establish ‘clear and convincing evidence’ as the required quantum of proof for a determination of guilt where such determination may result in the imposition of a fine but not imprisonment” (36 NY2d at 271). In upholding the administrative adjudication of traffic violations, the Court noted that the
“legislative declaration which accompanied the 1969 enactment is pointed: ‘Statement of findings and purpose. The legislature hereby finds that the incidence of crime in the larger cities of this state has placed an overwhelming burden upon the criminal courts thereof. This burden, when coupled with the responsibility for adjudicating such non-criminal offenses as traffic infractions, has resulted in a situation in which the prompt and judicious handling of cases becomes virtually impossible. Despite the efforts of all concerned, this situation has often resulted in the lengthy incarceration of defendants before trial, and the inability to grant a trial date for periods of up to one year, and longer. Because the injustices resulting from the present system can *967 not be corrected unless the workload of the criminal courts is substantially reduced, the legislature finds that it is necessary and desirable to establish a system for the administrative adjudication of traffic infractions in cities having a population of one million or more. Such a system will not only contribute to the more judicious disposition of criminal matters, by reducing the overwhelming workload of the criminal courts, but will also provide for the speedy and equitable disposition of charges which allege moving traffic violations’ ” {id. at 273 [emphasis supplied and citation omitted]).
“Whenever a crime and a traffic infraction arise out of the same transaction or occurrence, a charge alleging both offenses may be made returnable before the court having jurisdiction over the crime” (Vehicle and Traffic Law § 225 [1] [emphasis supplied]), but that was not done here, and the infraction was disposed of on default in the TVB. The burden of proof in that administrative tribunal was clear and convincing evidence, not proof beyond a reasonable doubt (Vehicle and Traffic Law § 227 [1]), and the hearing officer had no power to impose a sentence of imprisonment (Vehicle and Traffic Law § 227 [4] [a]). The only possible penalties, which were imposed here, were a fine and suspension of defendant’s driver’s license (Vehicle and Traffic Law §§ 225 [3]; 227 [4] [a]). The TVB’s determination was subject to administrative review by an appeals board (Vehicle and Traffic Law § 228 [1], [3]); judicial review pursuant to CPLR article 78 would only be available if a hearing had been held in the TVB and the transcript submitted at the time the appeal was filed (Vehicle and Traffic Law § 228). Finally, despite defendant’s assertion that the TVB entered “a plea of guilty” when it found him in default (Spivak aff at 7, 8), “[a]n order entered upon the failure to answer or appear . . . shall be civil in nature, but shall be treated as a conviction for purposes of this chapter” (Vehicle and Traffic Law § 227 [4] [a] [emphasis supplied]).[3]
In sum, the TVB is not a court of this state, and therefore defendant was not previously prosecuted for any offense arising *968 out of his driving on November 20, 2013. (See Beck v City of New York, 2014 WL 80544, *4, 2014 US Dist LEXIS 1136, *11-12 [SD NY, Jan. 3, 2014, No. 12-Civ-9231 (RA)] [driving without a license is not a criminal offense for purposes of a federal 42 USC § 1983 malicious prosecution claim; “ ‘the traffic court proceeding is civil in nature,’ and was thus ‘a regulatory rather than a “criminal proceeding’ ” (citation omitted)]; People v McCray, Sup Ct, Bronx County 2009, Dawson, J., index No. 909/ 2007, slip op at 1, 3-4 [resolution of traffic ticket charging violation of Vehicle and Traffic Law § 509 (1) in DMV Administrative Adjudication Bureau not a “previous prosecution” for double jeopardy purposes; DMV Administrative Adjudication Bureau not “a court of this state”]; Matter of Voccola v Shilling, 88 MisC 2d 103, 108 [Sup Ct, Kings County 1976] [“a default judgment of the (Parking Violations Bureau) is a judgment rendered exclusively by that administrative agency and not by the Civil Court, and, further, ... it was never meant to be nor does it ever become a judgment of the Civil Court”], affd 57 AD2d 931 *969 [2d Dept 1977]; Matter of Brawer v Criminal Ct. of City of N.Y., 47 Misc 2d 411, 412 [Sup Ct, Special Term, NY County 1965] [“Double jeopardy may not be predicated on departmental trials. . . . Prosecution does not debar discipline; nor does discipline debar prosecution”]; People v United Bus Corp., 102 Misc 2d 1097, 1098 [Suffolk Dist Ct 1980] [“The Administrative Adjudications Bureau (where corporate defendant pleaded guilty to Vehicle and Traffic Law violation for excessive exhaust) is not a court. Thus, by statutory definition there has been no previous prosecution in this case”].)[4]
Nor do the cases cited in defendant’s reply brief compel this court to hold that the TVB is “a court of this state” for purposes of double jeopardy. In Matter of Booth v Clary (83 NY2d 675 [1994]), the Court of Appeals held that a military tribunal was a court “of any jurisdiction within the United States” within the meaning of CPL 40.30 (1). Booth, who was charged with rape and other crimes under the Uniform Code of Military Justice, was sentenced to confinement at hard labor after a trial by a military judge (83 NY2d at 677), and Bridgewater was sentenced to one year’s imprisonment after he entered a guilty plea before a military tribunal that found him guilty of involuntary manslaughter under the Uniform Code of Military Justice (id. at 678). These prior prosecutions barred the District Attorney of Jefferson County from proceeding against Booth or Bridge-water under indictments charging violations of New York law for the identical conduct. The Court of Appeals took guidance from the fact that a court-martial adjudication constitutes a prior felony for purposes of second felony offender sentencing under New York law, and that, for federal constitutional double jeopardy purposes, a military court-martial adjudication is treated as the equivalent of a federal district court judgment (id. at 679-680). Here, in sharp contrast, defendant was not charged with any crimes in the TVB, which has no jurisdiction over felonies or misdemeanors and cannot and did not impose any jail sentence.
Similarly, in Hill v Eppolito (196 Misc 2d 616 [Sup Ct, Madison County 2003], affd 5 AD3d 854 [3d Dept 2004]), the defend *970 ant was charged in Oneida City Court with the violation of harassment, based on an allegation that he repeatedly bumped a female Oneida Indian Nation member with his stomach, causing her to fall back on her mother and causing her mother to fall. He was thereafter charged in Oneida Indian Tribal Court with assault in the third degree, harassment as a violation and disorderly conduct, based on the same conduct. A jury trial in Tribal Court proceeded first. (196 Misc 2d at 617.) In affirming the granting of Hill’s article 78 petition to enjoin the Oneida City Court prosecution, the Appellate Division held that “[t]he Oneida Indian Nation has enacted a Penal Code and Rules of Criminal Procedure providing the mechanism for enforcement of that Code, and its tribal courts clearly qualify as courts of any jurisdiction within the United States” (5 AD3d at 856). Like Booth v Clary, this case is entirely distinguishable from the present case.
Prentis v Atlantic Coast Line Co. (211 US 210 [1908]) is also inapposite. Prentis was not a double jeopardy case, but rather a federal preemption case “brought ... to enjoin the members and clerk of the Virginia State Corporation Commission from publishing or taking any other steps to enforce a certain order fixing passenger rates” (id. at 216). The Supreme Court “assume[d] that, for some purposes [the State Corporation Commission was] a court within the meaning of [the relevant federal statute forbidding federal courts from enjoining the proceedings of state courts] and in the commonly accepted sense of that word” (id. at 224). Thus, Prentis does not advance defendant’s claim.
Moreover, the imposition of civil and criminal penalties for the same conduct does not violate constitutional double jeopardy protections. (See Hudson v United States, 522 US at 95 [“The Government administratively imposed monetary penalties and occupational debarment on petitioners for violation of federal banking statutes, and later criminally indicted them for essentially the same conduct. We hold that the Double Jeopardy Clause of the Fifth Amendment is not a bar to the later criminal prosecution because the administrative proceedings were civil, not criminal”]; People v Vasquez, 89 NY2d 521, 529 [1997] [rejecting inmates’ claims that internal administrative disciplinary hearings followed by imposition of a disciplinary penalty including time in special housing unit, loss of privileges and loss of good time credit barred subsequent criminal prosecution for the same conduct on double jeopardy grounds; although *971 disciplinary sanctions did “in some sense, constitute a form of punishment,” that conclusion did not mandate a conclusion that the sanctions constituted punishment within the meaning of double jeopardy because “(p)rison disciplinary action is not designed to ‘vindicate public justice,’ but rather to further the separate and important public interest in maintaining prison order and safety”], cert denied sub nom. Cordero v Lalor, 522 US 846 [1997]; Matter of Barnes v Tofani, 27 NY2d 74, 78 [1970] [Commissioner of Motor Vehicles’ decision to suspend petitioner’s driver’s license for 60 days upon a finding that he was grossly negligent for drinking alcohol prior to vehicle accident did not bar subsequent suspension of his driver’s license for 60 days after conviction for driving while ability impaired (Vehicle and Traffic Law § 1192 [1]); “(t)he constitutional prohibitions against double jeopardy and double punishment do not prevent the Legislature from enacting, and the executive from enforcing, civil as well as criminal sanctions for the same conduct. . . . (S)uspension or revocation of the privilege of operating a motor vehicle is essentially civil in nature, having as its aims chastening of the errant motorist, and, more importantly, the protection of the public from such a dangerous individual”]; People v Edmonson, 300 AD2d 317, 317 [2d Dept 2002] [civil forfeiture of assets did not bar subsequent criminal prosecution; “(t)he civil forfeiture action does not constitute criminal ‘punishment’ within the meaning of . . . Double Jeopardy”], lv denied 99 NY2d 614 [2003], habeas denied 2006 WL 3486769, 2006 US Dist LEXIS 98216 [ED NY, Nov. 30, 2006, No. 04-CV-5477 (ARR)].)[5]
Finally, because defendant has not been prosecuted within a court of this state for his alleged actions on November 20, 2013, it is unnecessary for this court to consider his arguments for dismissal under CPL 40.20 (2).
*972 Conclusion
For all of these reasons, neither the Fifth Amendment, the New York State Constitution nor CPL 40.20 requires dismissal of the indictment for a double jeopardy violation. Defendant’s motion is therefore denied.

. Defendant omits the qualifying clause “other than a court in a city over one million population” (Spivak aff ¶ 22; reply mem at 15).

. The population requirement is now 200,000 or more (Vehicle and Traffic Law § 225).

. The TVB is governed by Vehicle and Traffic Law article 2-A and 15 NYCRR 121.1-125.4. Article 2-Á simply does not contain any provision permitting the TVB, as opposed to a court, to “enter a plea of guilty on behalf of the defendant.” Instead, a motorist’s
“[flailure to answer or appear in accordance with the requirements of this section and any regulations promulgated hereunder *968 shall be deemed an admission to the violation as charged, and an appropriate order may be entered in the department’s records, and a fine consistent with the provisions of this chapter and regulations of the commissioner may be imposed by the commissioner or person designated by the commissioner” (Vehicle and Traffic Law § 226 [3] [b] [emphasis supplied]).
A “deemed admission” on default in the TVB is not recognized as a manner in which a guilty plea may be entered pursuant to CPL 340.20 (2). (Contrast Vehicle and Traffic Law § 225 [1] [all violations “of a law, ordinance, order, rule or regulation relating to traffic . . . which occur within a city having a population of two hundred thousand or more in which administrative tribunals have heretofore been established, and which are classified as traffic infractions, may be heard and determined pursuant to the regulations of the commissioner as provided in this article. . . . Nothing herein provided shall be construed to prevent a court, having jurisdiction over a criminal charge relating to traffic or a traffic infraction, from lawfully entering a judgment of conviction, whether or not based on a plea of guilty, for any offense classified as a traffic infraction” (emphasis supplied)].) In addition, 15 NYCRR 121.2 states that the regulations established by the Commissioner of Motor Vehicles govern the operation of the TVB and “[t]he infractions are civil in nature, and proceedings before the bureau are not subject to requirements of the Criminal Procedure Law.” (See also Matter of Connors v New York State Dept. of Motor Vehs., 81 AD3d 479, 479-480 [1st Dept 2011] [“It is well established that the CPLR and the CPL are not binding on respondent and the procedures set forth therein do not apply to proceedings conducted by it unless specifically authorized (see 15 NYCRR 123.1)”]; Matter of Stamos v Appeals Bd. of N.Y. State Dept. of Motor Vehs., 309 AD2d 572 [1st Dept 2003] [rejecting petitioner’s contention that “in the context of administrative proceedings respecting alleged traffic infractions” pursuant to Vehicle and Traffic Law article 2-Á he was entitled to rely on CPL provisions providing for supporting deposition and speedy trial], Iv denied 1 NY3d 505 [2003].)

. Despite this analysis, the court in United Bus Corp. granted the motion to dismiss on the grounds that equal protection considerations required dismissal under CPL 40.20 (2) (102 Misc 2d at 1098-1099). The Court of Appeals, however, had specifically rejected a similar claim in Matter of Rosenthal v Hartnett, concluding that “[e]qual protection does not require territorial uniformity of a law within a State” (36 NY2d at 274 [citations omitted]). For the same reasons, defendant’s current equal protection argument (reply mem at 13) also fails.

. Thus, defendant’s claim (reply mem at 9) that “the punitive attributes of Vehicle and Traffic Law Section 509 (1) and a weighing of the Hudson factors [see 522 US at 99-100] clearly support a finding that the traffic infraction of Unlicensed Operation imposes a criminal, not a civil penalty” is unpersuasive. When imposed in the TVB, as they were here, the license suspension and fine for a Vehicle and Traffic Law § 509 (1) traffic infraction serve a remedial purpose. (See also People v McCray, index No. 909/2007, slip op at 3 [characterizing Vehicle and Traffic Law § 509 (1) as “a revenue measure”].) In any event, the Court in Hudson observed that “[i]f a sanction must be ‘solely’ remedial (i.e., entirely nondeterrent) to avoid implicating the Double Jeopardy Clause, then no civil penalties are beyond the scope of the Clause” (522 US at 102).