701 S.E.2d 97

STATE of West Virginia ex rel. Warren D. FRANKLIN, Appellant,

v.

Thomas McBRIDE, Warden, Mount Olive Correctional Complex, Appellee.

No. 34595.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 23, 2009.

Decided Oct. 9, 2009.

J.L. Hickok, Public Defender Services, Charleston, WV, Attorney for Appellant.

Darrell V. McGraw, Jr., Attorney General, Robert D. Goldberg, Assistant Attorney General, Charleston, WV, Attorneys for Appellee.

DAVIS, Justice:

Warren D. Franklin (hereinafter referred to as "Mr. Franklin") appeals from an order of the Circuit Court of Harrison County denying his petition for habeas corpus relief. Before this Court, Mr. Franklin assigns error as follows: (1) the State knowingly allowed witnesses to lie during his trial; (2) the trial court failed to give an instruction on accomplice testimony; (3) his due process rights were violated when his petition for

appeal was denied; and (4) imposition of administrative segregation constituted double jeopardy. After careful review of the parties' briefs and the record submitted on appeal, and having listened to the arguments of the parties, we affirm.

## I.

## FACTUAL AND PROCEDURAL HISTORY

■ On January 1, 1986, prisoners at the former state penitentiary in Moundsville, West Virginia, started a riot.[1] Mr. Franklin was an inmate at the prison when the riot erupted.[2] During the riot, an inmate by the name of Kent Slie was killed. In August 1986, the State indicted Mr. Franklin and two other inmates for the murder of Mr. Slie.[3]

Mr. Franklin's trial began in February 1988. During the trial, the State called two inmate witnesses.[4] One inmate witness, Donald Lane, testified to seeing Mr. Franklin and two other inmates dragging and beating Mr. Slie. The State's second inmate witness, Wallace Jackson, testified to seeing Mr. Franklin and two other inmates stabbing Mr. Slie.

Mr. Franklin did not testify at the trial; however, he called nine inmate witnesses.[5] Three of those witnesses—Fred Hamilton, Michael Kirk, and Jimmy Westfall gave direct testimony as to how Mr. Slie was killed. Mr. Hamilton testified that he was the per-

---

1. Mr. Franklin's petition for appeal and brief contained an opening page with the caption "Prologue," that has a reprint of a 1986 newspaper photo depicting a former Governor escorting a freed hostage from the Moundsville penitentiary. This photo has no evidentiary bearing on any issue in this case and therefore should not have been submitted with the petition or brief. *See Beclar Corp. v. Young*, 7 Haw.App. 183, 750 P.2d 934, 941 n. 14 (1988) ("Appellants['] ... attachment is inappropriate and in blatant violation of Rule 28(b)(9) of the Hawaii Rules of Appellate Procedure (1984), which prohibits anything not part of the record from being appended to the opening brief."). We caution the bar that briefs filed with this Court are formal legal documents that must conform with the Rules of Appellate Procedure. *See* W. Va. R.App. P. 28(d) ("The Clerk of the Supreme Court of Appeals may

refuse to accept for filing a brief or other paper which does not comply with the Rules of Appellate Procedure[.]").

2. The record does not indicate why Mr. Franklin was imprisoned.

3. The two other inmates were Bruce Franklin and William Snyder. Bruce Franklin, the brother of Mr. Franklin, was tried separately and convicted. Mr. Snyder's trial ended in a mistrial.

4. The State called a total of twelve witnesses during its case-in-chief, and one witness during its rebuttal.

5. Mr. Franklin called a total of ten witnesses.

son who killed Mr. Slie, not Mr. Franklin.[6] Mr. Kirk and Mr. Westfall testified that they saw Mr. Hamilton kill Mr. Slie.

At the conclusion of all the evidence, the jury returned a verdict finding Mr. Franklin guilty of murder in the first degree. The jury did not recommend mercy. On April 13, 1988, Mr. Franklin was sentenced to life imprisonment without the possibility of parole. Mr. Franklin subsequently filed a petition for appeal with this Court, which was denied.

Mr. Franklin filed a habeas corpus petition directly with this Court on May 18, 1994. This Court remanded the habeas petition to the circuit court for further review. The circuit court subsequently dismissed the habeas petition because Mr. Franklin failed to prosecute the matter. Mr. Franklin filed a second habeas petition with the circuit court in 2006. After counsel was appointed, the habeas petition was amended.

The circuit court held several evidentiary hearings on the amended habeas petition in 2007 and 2008. During those hearings, Mr. Franklin called two inmate witnesses: Gary Gibson and Charles Peacher.[7] Both witnesses testified that Mr. Franklin was not present when Mr. Slie was killed. Further, both witnesses testified that they saw William Snyder kill Mr. Slie. At the conclusion of the evidentiary hearings, the trial court entered an order on April 15, 2008, denying Mr. Franklin's request for habeas relief. From this ruling, Mr. Franklin now appeals.

## II.

### STANDARD OF REVIEW

■ We are called upon to review an order of the circuit court that was entered after an omnibus habeas corpus hearing that included testimony by witnesses. The circuit court's order set out findings of fact and conclusions of law. We previously have held

that "[f]indings of fact made by a trial court in a post-conviction habeas corpus proceeding will not be set aside or reversed on appeal by this Court unless such findings are clearly wrong." Syl. pt. 1, *State ex rel. Postelwaite v. Bechtold,* 158 W.Va. 479, 212 S.E.2d 69 (1975). We have explained more fully that,

> [i]n reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review.

Syl. pt. 1, *Mathena v. Haines,* 219 W.Va. 417, 633 S.E.2d 771 (2006). With these standards in mind, we now consider the issues presented in this appeal.

## III.

### DISCUSSION

Mr. Franklin's amended habeas petition sets out a number of grounds for relief. However, only four issues asserted below have been raised in this appeal.[8] The four grounds for relief presented in this appeal are: (1) the State knowingly allowed witnesses to lie during Mr. Franklin's trial; (2) the trial court failed to give an instruction on accomplice testimony; (3) Mr. Franklin's due process rights were violated when his petition for appeal was denied; and (4) the imposition of administrative segregation constituted double jeopardy. We will address each issue separately.

#### A. *False Testimony*

■ The first issue raised by Mr. Franklin is that the State knowingly allowed inmate witnesses to testify falsely against him during his trial. It is a basic principle of

---

6. During cross examination of Mr. Hamilton, the State brought out the fact that Mr. Hamilton had testified that he was in fact the killer, as opposed to the defendants who had been indicted, in two other inmate murder cases.

7. Mr. Franklin also testified during the proceeding via video conference.

8. *See Tiernan v. Charleston Area Med. Ctr., Inc.,* 203 W.Va. 135, 140 n. 10, 506 S.E.2d 578, 583 n. 10 (1998) ("Issues not raised on appeal or merely mentioned in passing are deemed waived." (citation omitted)).

law that "[p]rosecutors have a duty to the court not to knowingly encourage or present false testimony." *State v. Rivera*, 210 Ariz. 188, 109 P.3d 83, 89 (2005).[9] It has been correctly observed that "[w]hen the State obtains a conviction through the use of evidence that its representatives know to be false, the conviction violates the Due Process Clause of the Fourteenth Amendment." *State v. Wilkerson*, 363 N.C. 382, 683 S.E.2d 174, 187 (2009). *See also People v. Diaz*, 297 Ill.App.3d 362, 231 Ill.Dec. 523, 696 N.E.2d 819, 827 (1998) ("The State's knowing use of perjured testimony to obtain a criminal conviction constitutes a violation of due process of law."). This Court has previously held that "[a]lthough it is a violation of due process for the State to convict a defendant based on false evidence, such conviction will not be set aside unless it is shown that the false evidence had a material effect on the jury verdict." Syl. pt. 2, *Matter of Investigation of W. Va. State Police Crime Lab., Serology Div.*, 190 W.Va. 321, 438 S.E.2d 501 (1993). *See also United States v. Bagley*, 473 U.S. 667, 678–79, 105 S.Ct. 3375, 3381–82, 87 L.Ed.2d 481 (1985) (" '[A] conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.' *United States v. Agurs*, 427 U.S. 97, 103, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342 (1976).").

Although this Court has had occasion to address the issue of the State presenting false testimony, we have never articulated a concise test for analyzing the issue. Other courts that have addressed the issue take the position that, in order to succeed on a claim that the prosecutor presented false testimony at trial, a defendant "must demonstrate (1) that the prosecutor presented false testimony, (2) that the prosecutor knew or should have known it was false, and (3) that there is a reasonable likelihood that the perjured testimony could have affected the verdict." *O'Brien v. United States*, 962 A.2d 282, 315 (D.C.2008). *See also Jones v. State*, 998 So.2d 573, 580 (Fla.2008) ("[T]he defendant must demonstrate that (1) the prosecutor presented or failed to correct false testimony; (2) the prosecutor knew the testimony was false; and (3) the evidence was material."); *Gates v. State*, 252 Ga.App. 20, 555 S.E.2d 494, 496 (2001) (similar test); *State v. Hebert*, 277 Kan. 61, 82 P.3d 470, 487 (2004) (similar test); *Howard v. State*, 945 So.2d 326, 370 (Miss.2006) (similar test); *State v. Allen*, 360 N.C. 297, 626 S.E.2d 271, 279 (2006) (similar test); *Simpson v. Moore*, 367 S.C. 587, 627 S.E.2d 701, 708 (2006) (similar test); *Teleguz v. Commonwealth*, 273 Va. 458, 643 S.E.2d 708, 729 (2007) (similar test). Based upon the foregoing, we now hold that in order to obtain a new trial on a claim that the prosecutor presented false testimony at trial, a defendant must demonstrate that (1) the prosecutor presented false testimony, (2) the prosecutor knew or should have known the testimony was false,[10] and (3) the false

9. The issue of a lawyer's duty not to present false testimony is addressed in Rule 3.3 of the West Virginia Rules of Professional Conduct as follows:
    (a) A lawyer shall not knowingly:
    (1) make a false statement of material fact or law to a tribunal;
    (2) fail to disclose a material fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client;
    (3) fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel; or
    (4) offer evidence that the lawyer knows to be false. If a lawyer has offered material evidence and comes to know of its falsity, the lawyer shall take reasonable remedial measures.

    (b) The duties stated in paragraph (a) continue to the conclusion of the proceeding, and apply even if compliance requires disclosure of information otherwise protected by Rule 1.6.
    (c) A lawyer may refuse to offer evidence that the lawyer reasonably believes is false.
    (d) In an ex parte proceeding, a lawyer shall inform the tribunal of all material facts known to the lawyer which will enable the tribunal to make an informed decision, whether or not the facts are adverse.

10. Should law enforcement officials involved with a criminal prosecution know that a witness for the State testified falsely, that knowledge is imputed to the prosecutor. *See* Syl. pt. 1, in part, *State v. Youngblood*, 221 W.Va. 20, 650 S.E.2d 119 (2007) ("A police investigator's knowledge of evidence in a criminal case is imputed to the prosecutor.").

testimony had a material effect on the jury verdict.[11]

Turning to the instant case, we find that Mr. Franklin is unable to satisfy the first element of the test which requires that the State presented false testimony. This is the central problem with Mr. Franklin's argument. Mr. Franklin has failed to produce any evidentiary material establishing that the State's witnesses testified falsely. The sole basis for Mr. Franklin's contention that the State provided false testimony is the following, as set out in his brief:

> Corrections Officers knew or should have known that [Mr. Franklin] did not commit murder, but they charged him and his brother in an attempt to persuade him to testify against the inmate they thought was guilty. The testimony in the habeas proceedings of other inmates is consistent with [Mr. Franklin's] insistence that he was not in the vicinity of Kent Slie and did not witness his killing. . . .

> The decision to prosecute [Mr.] Franklin was somewhat arbitrary; the State had to decide whether to believe those convicted criminals who accused him, with full knowledge that many (if not all of them) had ample reasons to lie.

The trial court concluded that this purported evidence amounted to "conclusory statements that the State use[d] perjured testimony to obtain [Mr. Franklin's] conviction." We agree.

The best that we are able to determine from Mr. Franklin's conclusory allegations is that the State's two inmate witnesses had reason to lie and that the State knew the witnesses had reason to lie.[12] This Court rejected a similar argument in *State v. Brown*, 210 W.Va. 14, 552 S.E.2d 390 (2001). The defendant in *Brown* was convicted by a jury of two murders. One of the issues raised in the appeal involved alleged false testimony by the State's witnesses. The *Brown* opinion set forth the argument as follows:

> [T]he defendant claims that the prosecuting attorney should have known there was a substantial probability that some evidence against the defendant was false, and that this false evidence materially affected the verdict. . . . The defendant points to the low character and incentive to lie of the State's witnesses, and appears to argue that this should have put the prosecutor on notice that these witnesses were not telling the truth.

*Brown*, 210 W.Va. at 27, 552 S.E.2d at 403. We rejected the defendant's argument in *Brown*. In doing so, we stated:

> We are not convinced by the defendant's argument. Not only is there no evidence in the record which supports the claim that the prosecutor knew or should have known that evidence was false, there is no proof that any of the State's evidence was actually false. Rather, all that the defendant can demonstrate is that [the] State's witnesses were disreputable persons who had

---

**11.** If the first two prongs of the test are met, the third prong must be analyzed under Syllabus point 2 of *State v. Atkins*, 163 W.Va. 502, 261 S.E.2d 55 (1979):

> Where improper evidence of a nonconstitutional nature is introduced by the State in a criminal trial, the test to determine if the error is harmless is: (1) the inadmissible evidence must be removed from the State's case and a determination made as to whether the remaining evidence is sufficient to convince impartial minds of the defendant's guilt beyond a reasonable doubt; (2) if the remaining evidence is found to be insufficient, the error is not harmless; (3) if the remaining evidence is sufficient to support the conviction, an analysis must then be made to determine whether the error had any prejudicial effect on the jury.

See *Matter of Investigation of West Virginia State Police Crime Lab., Serology Div.*, 190 W.Va. 321,

326, 438 S.E.2d 501, 506 (1993) ("[O]nce the use of false evidence is established ... such use constitutes a violation of due process. The only inquiry that remains is to analyze the other evidence in the case under the *Atkins* rule to determine if there is sufficient evidence to uphold the conviction.").

**12.** An argument made below by Mr. Franklin, but not pursued on appeal, is that the testimony from the State's two inmate witnesses differed with respect to certain details. It has been correctly noted that "there is a difference between the knowing presentation of false testimony and knowing that testimony conflicts in some manner. It is for the jury to decide issues of fact when conflicting information is elicited by either party." *State v. Allen*, 360 N.C. 297, 626 S.E.2d 271, 279 (2006).

reasons to lie. The witnesses' characters and motives were adduced at trial and argued at length to the jury.

... It was the role of the jury to weigh the evidence and make credibility assessments after it observed the witnesses and heard their testimony. The jury made its determination, and this Court will not second guess it simply because we may have assessed the credibility of the witnesses differently.

*Brown,* 210 W.Va. at 27, 552 S.E.2d at 403. *See also State v. Rivera,* 210 Ariz. 188, 109 P.3d 83, 89 (2005) ("Absent a showing that the prosecution was aware of any false testimony, the credibility of witnesses is for the jury to determine.").

In the instant proceeding, Mr. Franklin has done no more than argue, like the defendant in *Brown,* that the State's witnesses had motives to lie. Such an assertion is legally insufficient to sustain a claim that the State presented false testimony. Therefore, we find no error in the trial court's rejection of this assignment of error.[13]

## B. Instruction on Accomplice Testimony

The next issue raised by Mr. Franklin concerns the trial court's failure to give an accomplice jury instruction. Mr. Franklin contends that under our decision in *State v. Humphreys,* 128 W.Va. 370, 36 S.E.2d 469 (1945), the trial court had a duty to instruct the jury on how it should receive testimony by an accomplice. This Court held the following in syllabus point 1 of *Humphreys:*

Conviction for a crime may be had upon the uncorroborated testimony of an accomplice; but in such case the testimony must be received with caution and the jury should, upon request, be so instructed.

It has been correctly observed that "in order to be an accomplice, the witness must have played a knowing role in the crime—the witness' mere presence at the scene is not sufficient." *State v. Pendleton,* 759 N.W.2d 900, 907 (Minn.2009). The State points out that, during Mr. Franklin's trial, it did not call an accomplice to testify. It called two inmate witnesses who were near the scene of the crime. Mr. Franklin has not disputed this fact. Instead, Mr. Franklin simply argues that "[t]he inmates who testified on behalf of the State were unreliable and the jury was not instructed about the weight they should give such testimony." The decision in *Humphreys* does not require a cautionary instruction be given for mere witnesses to a crime. A *Humphreys* instruction is required when an accomplice to the crime testifies for the State.[14] Consequently, the circuit court's summary rejection of this issue in its habeas order was correct.

## C. Denial of Petition for Appeal

The next issue raised by Mr. Franklin involves this Court's denial of his petition for appeal of his conviction. Mr. Franklin contends that, under the due process clauses of the state and federal constitutions, he was entitled to a direct appeal on the merits of his case.

Mr. Franklin asserts, without citation to any authority, that the highest appellate court in "almost every other state" provides for automatic review of a sentence of life imprisonment without parole. This assertion is simply wrong. In our review of state laws,

13. We wish to make clear that we have not been called upon to determine Mr. Franklin's innocence in light of the testimony of his two habeas witnesses. Further, the only thing that can be established from the fact that Mr. Franklin's two habeas witnesses testified that Mr. Slie was killed by William Snyder is that Mr. Franklin has been able to procure two witnesses that contradicted the evidence he put on during his trial. As we previously indicated, during the trial Mr. Franklin called a witness, Fred Hamilton, who testified to being the actual killer. Mr. Franklin also presented testimony by Michael Kirk and Jimmy Westfall, each of whom testified to seeing Mr. Hamilton kill Mr. Slie. To the extent that the

issue of perjured testimony has any basis in the prosecution of Mr. Franklin, that basis rests in the witnesses he summoned during his trial and habeas proceeding.

14. Had the State called one or both of the actual accomplices to the murder, Bruce Franklin and William Snyder, the decision in *Humphreys* does not mandate that a trial judge sua sponte give a cautionary instruction on accomplice testimony. Under *Humphreys,* a defendant must request such an instruction. The State correctly points out that Mr. Franklin did not request a *Humphreys* instruction during his trial.

we have found that, while a large minority of state high courts grant an appeal of right in criminal cases,[15] the majority of state high courts provide only for discretionary review of criminal convictions, except for cases involving a sentence of death.[16]

Without acknowledging the fact in his brief, Mr. Franklin is asking this Court to overrule our decision in *Billotti v. Dodrill*, 183 W.Va. 48, 394 S.E.2d 32 (1990).[17] The decision in *Billotti* involved a habeas proceeding wherein one of the arguments raised by the defendant was "that it is a violation of due process of law to deny an individual an automatic right to full appellate review when the individual has been convicted of first-degree murder and sentenced to life in prison with no possibility of parole." *Billotti*, 183 W.Va. at 52, 394 S.E.2d at 36. We rejected the argument and held the following in Syllabus point 4 of *Billotti:*

> West Virginia does not grant a criminal defendant a first appeal of right, either statutorily or constitutionally. However, our discretionary procedure of either granting or denying a final full appellate review of a conviction does not violate a criminal defendant's guarantee of due process and equal protection of the law.

Subsequent to the decision in *Billotti,* the defendant filed a federal habeas corpus petition alleging discretionary appellate review of his case violated due process principles. The issue was taken up by the Fourth Circuit Court of Appeals in *Billotti v. Legursky,* 975 F.2d 113 (4th Cir.1992), *cert. denied,* 507 U.S. 984, 113 S.Ct. 1578, 123 L.Ed.2d 146 (1993). The Fourth Circuit rejected the argument and, in doing so, made the following observations:

> It is plain that West Virginia has afforded Billotti an adequate opportunity to challenge the alleged errors in his trial. The Fourteenth Amendment does not authorize the federal courts to micromanage state criminal justice systems. In our federal system, the states are allowed to structure their systems of criminal justice as they see fit, as long as their systems satisfy the basic demands of due process. There is often no one best way of doing things. . . .

> Indeed, petitioner has not explained exactly how an appeal as of right would have increased the accuracy of the determination that he received. In many jurisdictions, appeal as of right is conducted without oral argument, with screening by staff

---

15. *See generally* Ark.R.S.Ct., Rule 1–2 (Lexis 2009); Con. Gen.Stat. Ann. § 51–199 (West 2005); Del.Code Ann. tit. 10, § 142 (Michie 1999); Ga.Code Ann. § 5–6–34 (Supp. Lexis 2009); Idaho App. R., Rule 11 (Michie 2009); Ind. R.App. P., Rule 4 (Lexis 2009); Kan. Stat. Ann. § 22–3601 (2007); Ky. R.Crim. P., Rule 12.02 (Lexis 2009); Me.Rev.Stat. Ann. tit. 15, § 2115 (West 2003); Md.Code Ann., Cts. & Jud. Pro. § 12–301 (Lexis 2006); Mass. Gen. Laws Ann. ch. 278, § 33E (West 1998); Minn. R.Crim. P., Rule 29.02 (West 2006); Miss.Code § 99–35–101 (Supp. West 2008); Mont.Code Ann. § 46–20–104 (West 2009); Neb.Rev.Stat. § 29–2521.02 (2008); Nev.Rev.Stat. § 177.015 (2007); N.M.R.App. P., Rule 12–102 (2009); N.D. Cent. Code § 29–28–03 (Lexis 2006); R.I. Gen. Laws § 12–19.2–5 (Lexis 2002); S.D. Codified Laws tit. 23A, § 23A–32–2 (West 2004); Utah Code Ann. § 78A–3–102 (Supp. Lexis 2008); Vt. R.App. P., Rule 3 (Supp. Lexis 2006); Wash. Rev.Code tit. 2, § 2.04.010 (West 2004); Wyo. Stat. Ann. § 7–12–101 (Lexis 2009).

16. *See generally* Ala. R.App. P., Rule 39(a) (Supp. Lexis 2008); Alaska Stat. § 22.05.010 (Lexis 2008); Ariz.Rev.Stat. Ann. § 12–120.24 (West 2003) & Ariz. R.Crim. P., Rule 31.19 (Supp. West 2008); Cal. Const. Art. 6, § 12 (West 1996); Colo.App. R., Rule 49 (2009); Fla. R.App. P.,

Rule 9.030(a) (Supp. West 2009); Haw.Rev.Stat. §§ 602–5 & 602–59 (Supp.2008); Ill. S.Ct. R.Crim.App., Rules 315, 317, 603 (Supp. West 2009); Iowa Code § 602.4102 (Supp. West 2009); La.Code.Crim. P., Art. 912.1 (West 2008); Mich. Comp. Laws § 770.3(6) (Supp. Lexis 2009); Mo. Const. Art. 5, § 3 (West 1995); N.H.S.Ct. R., Rule 7 (Lexis 2005); N.J. Const. Art. 6, § 5 (Supp. West 2009); N.Y.Crim. Pro. Law § 450.90 (Law.Co-op.1996); N.C. Gen.Stat. § 7A–31 (Lexis 2007); Ohio Rev.Code Ann. § 2953.02 (Lexis 2006); Okla. Const. Art. 7, § 4 (West 2006); Or.Rev.Stat. tit. 1, § 2.520 (2007); Pa. Stat. Ann. tit. 42, § 724 (West 2004); S.C.Code Ann. § 14–8–210 (Supp. West 2008); Tenn. R.App. P., Rule 11 (Lexis 2009); Tex. Gov. Code Ann. § 22.001(West 2004); Va. S.Ct. R., Rule 5:17 (Lexis 2009); Wis. S.Ct. Int. Oper. Pro., I.O.P. II (West 2009). Three states actually have specialized criminal appeal courts. *See* Ala. Code § 12–3–9 (Lexis 2005); Okla.Crim. P., § 1051 (2003); Tex.R.App. P., Rule 66.2 (West 2004).

17. During oral argument, counsel for Mr. Franklin acknowledged for the first time that he was seeking to overrule *Billotti.*

attorneys, or with limited briefing. We cannot see how such streamlined systems deliver a more meaningful opportunity to be heard than does West Virginia's system of discretionary appeals. West Virginia allowed Billotti to communicate his claims of legal error to the reviewing tribunal, accompanied by a record of the proceedings below necessary to evaluate his arguments. We believe that due process requires no more.

*Billotti,* 975 F.2d at 116–17 (internal citations omitted).

Mr. Franklin has not presented any valid basis for revisiting our ruling in *Billotti* and the well-reasoned analysis by the Fourth Circuit in *Billotti v. Legursky.* Therefore, we reject his contention that due process required automatic review of his initial petition for appeal. *See State v. Legg,* 151 W.Va. 401, 404–05, 151 S.E.2d 215, 218 (1966) ("One convicted of a criminal offense is not entitled to a writ of error as a matter of right. The Constitution and statutes create an absolute right merely to apply for a writ of error.").

### D. Double Jeopardy

The final argument raised by Mr. Franklin involves his apparent placement in administrative segregation while in prison. The best that we are able to discern from Mr. Franklin's brief is that placement in administrative segregation resulted from his having been found guilty of killing Mr. Slie and, as such, violated double jeopardy.[18] The initial problem we have with this argument is that the record in this case does not contain any evidence of the basis for Mr. Franklin being placed in administrative segregation. His argument contains only his self-serving assertions. Further, it appears that Mr. Franklin has challenged the imposition of administrative segregation in another proceeding that is pending in a lower court. Insofar as the record in this case is inadequate to determine the actual basis for Mr.

Franklin having been placed on administrative segregation, we will assume, for the sake of argument, that the sanction was imposed because Mr. Franklin violated prison rules by murdering an inmate.

We begin by noting that the decisions of this Court have held that the double jeopardy clauses of the state and federal constitutions impose the same protections:

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution consists of three separate constitutional protections. It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.

Syl. pt. 1, *State v. Gill,* 187 W.Va. 136, 416 S.E.2d 253 (1992).

The Double Jeopardy Clause in Article III, Section 5 of the West Virginia Constitution, provides immunity from further prosecution where a court having jurisdiction has acquitted the accused. It protects against a second prosecution for the same offense after conviction. It also prohibits multiple punishments for the same offense.

Syl. pt. 1, *Conner v. Griffith,* 160 W.Va. 680, 238 S.E.2d 529 (1977).

It has been recognized that "[v]irtually every federal circuit court of appeals has held that prison disciplinary proceedings do not violate the double jeopardy provisions of the Fifth Amendment of the United States Constitution." *State v. Kell,* 61 P.3d 1019, 1037 (Utah 2002) (citing *United States v. Mayes,* 158 F.3d 1215, 1220 (11th Cir.1998); *United States v. Brown,* 59 F.3d 102, 105 (9th Cir.1995); *United States v. Hernandez–Fundora,* 58 F.3d 802, 806–08 (2d Cir.1995); *Garrity v. Fiedler,* 41 F.3d 1150, 1152 (7th Cir.1994); *United States v. Newby,* 11 F.3d 1143, 1144–45 (3d Cir.1993); *United States v.*

---

18. The brief sets out a number of other conclusory statements on the issue of administrative segregation without any analysis or supporting authority. We decline to address those matters. *See State v. LaRock,* 196 W.Va. 294, 302, 470 S.E.2d 613, 621 (1996) ("Although we liberally construe briefs in determining issues presented for review, issues which are ... mentioned only

in passing but are not supported with pertinent authority, are not considered on appeal."); *State v. Lilly,* 194 W.Va. 595, 605 n. 16, 461 S.E.2d 101, 111 n. 16 (1995) ("Indeed, '[i]t is ... well settled, ... that casual mention of an issue in a brief is cursory treatment insufficient to preserve the issue on appeal.' *Kost v. Kozakiewicz,* 1 F.3d 176, 182 (3rd Cir.1993).").

*Rising,* 867 F.2d 1255, 1259 (10th Cir.1989); *Kerns v. Parratt,* 672 F.2d 690, 691–92 (8th Cir.1982); *Fano v. Meachum,* 520 F.2d 374, 376 n. 1 (1st Cir.1975); *United States v. Lepiscopo,* 429 F.2d 258, 261 (5th Cir.1970); *Hamrick v. Peyton,* 349 F.2d 370, 372 (4th Cir.1965); *Gibson v. United States,* 161 F.2d 973, 974 (6th Cir.1947)). This Court was called upon in *Conley v. Dingess,* 162 W.Va. 414, 250 S.E.2d 136 (1978), *overruled on other grounds by State ex rel. Faircloth v. Catlett,* 165 W.Va. 179, 267 S.E.2d 736 (1980), to address the issue of double jeopardy and prison discipline.

In *Conley,* the defendant escaped from custody while awaiting resentencing. After the defendant was captured, prison authorities found that he violated prison rules by escaping and, therefore, punished him with 120 days of administrative segregation. The State subsequently prosecuted and convicted the defendant for the crime of escape. The defendant filed a petition for habeas corpus relief directly with this Court. In that petition, the defendant argued that "the sentence for escape and the administrative discipline imposed therefor constitute double jeopardy." *Conley,* 162 W.Va. at 415, 250 S.E.2d at 137. We rejected the argument for the following reasons:

> The doctrine of double jeopardy clearly contemplates two prosecutions for the same offense before a court of competent jurisdiction. It has strict application to criminal prosecution only and is not applicable to civil actions. Disciplinary proceedings such as the one imposed upon this petitioner are civil rather than criminal in nature and do not subject the recipient of such discipline to double jeopardy.

*Conley,* 162 W.Va. at 417, 250 S.E.2d at 138. *See also De Grijze v. Selsky,* 305 A.D.2d 761, 759 N.Y.S.2d 570, 571 (2003) ("[S]anctions imposed in the context of prison disciplinary proceedings 'do not constitute criminal punishment triggering double jeopardy protections.' *People v. Vasquez,* 89 N.Y.2d 521, 532, 655 N.Y.S.2d 870, 678 N.E.2d 482 (1997)."); *In re Goulsby,* 120 Wash.App. 223, 84 P.3d 922, 925 (2004) ("Prison disciplinary hearings are not criminal prosecutions, and the full panoply of rights due a criminal defendant does not apply. The double jeopardy clause protects against multiple criminal punishments for the same offense. It therefore does not pertain to prison disciplinary hearings that are in the nature of remedial, civil proceedings.").

■ In view of the decision in *Conley* and other authorities, we now hold that prison disciplinary action against an inmate, for conduct for which he or she was criminally prosecuted, does not violate the Double Jeopardy Clauses of Article III, Section 5 of the West Virginia Constitution and the Fifth Amendment to the United States Constitution.

Assuming, as alleged by Mr. Franklin, that prison officials placed him on administrative segregation for killing Mr. Slie, such placement in and of itself did not violate double jeopardy principles. We therefore find no error in the trial court's rejection of this issue.

## IV.

## CONCLUSION

Based upon the foregoing, we affirm the circuit court's order denying Mr. Franklin habeas corpus relief.

Affirmed.