# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Larry David Tomblin,**
**Petitioner Below, Petitioner**

**vs)  No. 16-0432** (Cabell County 07-C-766)

**Patrick A. Mirandy, Warden,**
**St. Marys Correctional Center,**
**Respondent Below, Respondent**

**FILED**

**April 10, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Larry David Tomblin, by counsel Shawn Bartram, appeals the Circuit Court of Cabell County's March 3, 2016, order denying his petition for writ of habeas corpus. Respondent Patrick A. Mirandy, Warden, by counsel Shannon Frederick Kiser, filed a response.[1] On appeal, petitioner alleges that the circuit court erred in denying his habeas petition and in failing to hold an evidentiary hearing.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In October of 2005, petitioner was arrested and charged with the first-degree murder of Jason Wilson. Thereafter, he was indicted on one count of first-degree murder. In May of 2006, petitioner pled guilty to one count of first-degree murder. Subsequently, on June 21, 2006, he was sentenced to a term of incarceration of life with mercy.

In August of 2007, petitioner filed a petition for writ of mandamus.[2] Subsequently, on July 1, 2015, petitioner, by counsel, filed an amended petition for writ of habeas corpus alleging four substantive grounds for relief: (1) involuntary guilty plea; (2) ineffective assistance of counsel; (3) severer sentence than expected; and (4) questions of actual guilt upon an acceptable

---

[1]Pursuant to Rule 41(c) of the West Virginia Rules of Appellate Procedure, we have replaced the original respondent, Marvin Plumley, with Patrick A. Mirandy, Warden of the St. Marys Correctional Center, because petitioner is currently incarcerated at the St. Marys Correctional Center.

[2]Petitioner's petition for writ of mandamus appears to have been treated by the circuit court as a petition for writ of habeas corpus.

1

guilty plea.

By order entered on March 3, 2016, the circuit court denied petitioner's petition for habeas relief without conducting an omnibus evidentiary hearing. The circuit court found that the underlying record demonstrated that petitioner was not induced to enter a guilty plea; that he understood that the circuit court had the sole discretion to determine petitioner's sentence; and that he "recognized and accepted all the elements of his guilty plea." The circuit court also found that petitioner's own statements at the plea hearing indicated that he was satisfied with his counsel's representation, and his sentence was "expected for such a serious crime" and legislatively prescribed. The circuit court further found that, despite petitioner's claims to the contrary, the State provided testimony with evidence at the plea hearing that he was involved with a premeditated murder-for-hire scheme. It is from this order that petitioner appeals.

This Court reviews appeals of circuit court orders denying habeas corpus relief under the following standard:

> "In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syllabus point 1, *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006).

Syl. Pt. 1, *State ex rel. Franklin v. McBride*, 226 W.Va. 375, 701 S.E.2d 97 (2009).

On appeal to this Court, petitioner alleges that he was entitled to an omnibus evidentiary hearing, because the circuit court could not appropriately rule on his habeas petition without a full evidentiary record. The Court, however, does not agree. We have previously held that

> "[a] court having jurisdiction over habeas corpus proceedings may deny a petition for a writ of habeas corpus without a hearing and without appointing counsel for the petitioner if the petition, exhibits, affidavits or other documentary evidence filed therewith show to such court's satisfaction that the petitioner is entitled to no relief." Syllabus Point 1, *Perdue v. Coiner*, 156 W.Va. 467, 194 S.E.2d 657 (1973).

Syl. Pt. 3, *Markley v. Coleman*, 215 W.Va. 729, 601 S.E.2d 49 (2004). In the present matter, petitioner argues simply that it was error to deny his petition because he alleged several claims which, he argues, can only be properly decided after conducting an evidentiary hearing.

Pursuant to Rule 9(a) of Rules Governing Post-Conviction Habeas Corpus Proceedings in West Virginia, "the circuit court, after the answer is filed, shall, upon a review of the record, if any, determine whether an evidentiary hearing is required." The clear language of this rule gives circuit courts the discretion to hold an evidentiary hearing. As the circuit court correctly determined, petitioner failed to allege any facts that would warrant an evidentiary hearing. Indeed, the circuit court's order supports its finding that an evidentiary hearing was not required

based upon a thorough review of the underlying criminal case and the petition and memorandum in support. As such, it is clear that the circuit court did not err in denying the petition for writ of habeas corpus.

Upon our review and consideration of the circuit court's order, the parties' arguments, and the record submitted on appeal, we find no error or abuse of discretion by the circuit court. Our review of the record supports the circuit court's decision to deny petitioner post-conviction habeas corpus relief based on errors alleged in the petition, which were also argued below. The circuit court's order includes well-reasoned findings and conclusions as to the assignments of error raised on appeal. Given our conclusion that the circuit court's order and the record before us reflect no clear error or abuse of discretion, we hereby adopt and incorporate the circuit court's well-reasoned findings and conclusions as they relate to petitioner's assignments of error raised herein and direct the Clerk to attach a copy of the circuit court's March 3, 2016, "Order Denying Writ of Habeas Corpus" to this memorandum decision.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** April 10, 2017

**CONCURRED IN BY:**

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Elizabeth D. Walker

**DISSENTING:**

Justice Margaret L. Workman
Justice Menis E. Ketchum

FILED

IN THE CIRCUIT COURT OF CABELL COUNTY, WEST VIRGINIA

2016 APR -1 AM 9: 01

LARRY DAVID TOMBLIN,   J.E. WOOD

PETITIONER,

v.

CIVIL ACTION NO. 07-C-766
UNDERLYING FELONY 06-F-72
JUDGE ALFRED E. FERGUSON

HUTTONSVILLE CORRECTIONAL CENTER,

RESPONDENT.

### ORDER DENYING WRIT OF HABEAS CORPUS

This matter came before this Court on the 1st day of July, 2015, when the Petitioner filed his Amended Petition, by counsel, Shawn Bartram, under W.Va. Code § 53-4A-1 for Writ of Habeas Corpus. The Respondent, by Sean Hammers, Assistant Prosecuting Attorney of Cabell County, filed a memorandum in response on August 4, 2015. A status hearing was held on February 4, 2016 wherein all parties were present. The Court denied the Petition at that time and this Order fully details the ruling.

The Court has considered the Amended Petition, the Memorandum in Response, and has reviewed all pertinent legal authorities. The Court takes judicial notice of all proceedings and the record in the underlying case, to wit: Indictment 06-F-72. Furthermore, the Circuit Court of Cabell County, West Virginia has proper jurisdiction in this matter pursuant to W.Va. Code § 53-4A-1-13, *et seq.*

This Petition will be determined without an omnibus evidentiary hearing. A court having jurisdiction over habeas corpus proceedings may deny a petition for a writ of habeas corpus without conducting a hearing and without appointing counsel for the petitioner if the petition,

exhibits, affidavits or other documentary evidence show to the court's satisfaction that the petitioner is entitled to no relief. Mugnano v. Painter, 212 W.Va. 831, 575 S.E.2d 590 (2002). The Court finds that the information included in the petition and memorandum in support is sufficient to determine the validity of the Petitioner's claims.

## FACTUAL BACKGROUND

Between July 30, 2005 and July 31, 2005, the Petitioner, along with co-defendant, Mark Stickler, shot Jason Wilson with a handgun in a parking garage on Fifth Avenue in Huntington, West Virginia. One October 20, 2005, the Petitioner was arrested by Huntington Police Department and charged with First Degree Murder.

## PROCEDURAL HISTORY

### A. Lower Court Matters

- On November 17, 2005, the Petitioner appeared in person and by appointed counsel, Steve Jarrell before a Cabell County Magistrate and waived his right to a Preliminary Hearing on the aforementioned charges.

### B. The Indictment

- On January 20, 2006, the Petitioner was indicted by a Cabell County Grand Jury alleging that the Petitioner, along with his co-defendant, Mark Stickler, jointly committed the offense of "Murder" by shooting one Jason Wilson with a gun.

### C. Pre-Trial Matters

- On or about February 7, 2006, Petitioner was arraigned by this Court. He was allowed to remain on home confinement pending the outcome of the case.

### C. Plea Agreement Negotiations and Sentencing

2

- On or about May 23, 2006, the Petitioner, along with his attorney Steve Jarrell, appeared before this Court. At said hearing, Petitioner entered a plea of guilty to the charge of First Degree Murder with a recommendation of Mercy. The Petitioner admitted to shooting Jason Wilson while Mark Stickler aimed a gun at him, ordering him to shoot the victim. The Court deferred sentencing until June 21, 2006 so that a presentence report could be completed.

- On or about June 21, 2006, the Petitioner and his counsel, Steve Jarrell, again appeared before this Court. The Court sentenced Petitioner to Life with Mercy in the State Penitentiary.

## D. Post-Conviction Matters

- Petitioner had filed a Writ of Mandamus on August 28, 2007 requesting production of documents. Petitioner wrote this Court a letter requesting the appointment of counsel to assist in preparing a Writ of Habeas Corpus. Inadvertently, this Court drafted an order granting the request with the case number of his original 2007 mandamus petition instead of a new habeas corpus petition case file number. All further documents relating to his habeas petition have been docketed under the same number.

- On February 8, 2012, pursuant to R.H.C. 4(b), Shawn Bartram was appointed as counsel.

- On July 1, 2015, a Petition for Writ of Habeas Corpus, Memorandum in Support of Petition and a *Losh* Checklist was filed with the Court.

- The Respondent, by Sean Hammers, Assistant Prosecuting Attorney of Cabell County, filed a Response to the Petition on August 4, 2015.

<u>**PETITIONER'S GROUNDS FOR RELIEF**</u>

3

On July 1, 2015, Petitioner filed his *Losh* Checklist and asserted four grounds for relief: (1) Involuntary guilty plea; (2) ineffective assistance of counsel; (3) severer sentence than expected; and (4) question of actual guilt upon an acceptable guilty plea.

## CONCLUSIONS OF LAW

1.  The applicable statutes for the issuance of a writ of habeas corpus fall under W.Va. Code §53-4A-1 *et. seq.* and the writs are "civil in character and shall under no circumstances be regarded as criminal proceedings or a criminal case."

2.  "A habeas corpus petitioner is entitled to careful consideration of his grounds for relief, and the Court before which the writ is made returnable has a duty to provide whatever facilities and procedures are necessary to afford the petitioner an adequate opportunity to demonstrate his entitlement to relief." *Gibson v. Dale*, 173 W.Va. 681, 319 S.E.2d 806 (1984).

3.  Only constitutional or jurisdictional defects are cognizable grounds in post-conviction habeas corpus proceedings. Syl. pt. 4. *State ex rel. McMannis v. Mohn*, 163 W.Va. 129, 137, 254 S.E.2d 805, 809 (1979).

4.  Claims that have been "previously and finally adjudicated" either on direct appeal or in a previous post-conviction habeas proceeding may not form the basis for habeas relief. W.Va. Code §53-4A-1(b); *See also Bowman v. Leverette*, 169 W.Va. 589 at 591, 289 S.E.2d 435 at 437, (1982). However, claims that were merely raised in a petition for appeal that was refused are not precluded. *Smith v. Hedrick*, 181 W.Va. 394 at 395, 382 S.E.2d 588 at 589 (1989).

4

5. "[T]he burden of proof rests on the petitioner to rebut the presumption that he intelligently and knowingly waived any contention for relief which he could have advance on direct appeal." *Losh v. McKenzie*, 166 W.Va. 762, 277 S.E.2d 606 (1981).

6. "Waiver" is intentional relinquishment or abandonment of a known right; when there has been such knowing waiver, there is no error and inquiry as to effect of deviation from the rule of law need not be determined. *State v. Crabtree*, 198 W.Va. 620, 482 S.E.2d 605 (1996).

7. To prevail in post-conviction habeas corpus proceedings, the "petitioner has the burden of proving by a preponderance of the evidence the allegations contained in his petition or affidavit would warrant his release. *State ex rel. Scott v. Boyles*, Syl. pt. 1, 150 W.Va. 453, 147 S.E.2d 486 (1966).

8. "[P]ost-conviction proceedings are not a venue for a petitioner to retry his case under different theories than those advanced at trial." *State ex rel. Rickey v. Bill*, 216 W.Va. 155 at 165, 603 S.E.2d 177 at 187 (2004).

## *INVOLUNTARY GUILTY PLEA*
### *(Ground #1)*

Due process requires that a guilty plea be voluntary, knowing and intelligent. "It must not be induced by fear, misrepresentation, by persuasion, or by the holding out of false hopes nor made through inadvertence, or by ignorance. *State v. Stone*, 101 W.Va. 53, 56, 131 S.E.2d 872, 873 (1926). The burden of proving that a plea was involuntary rests upon the pleader. *State ex rel. Clancy v. Coiner*, 154 W.Va. 857, 179 S.E.2d 726 (1971). "[T]he controlling test as to the validity of a guilty plea, when it is attacked in a habeas corpus proceeding on grounds that fall within those on which counsel might reasonably be expected to advise, is the competency of the advice given by counsel. *State v. Sims*, 162 W.Va. 212, 217, 248 S.E.2d 834, 837 (1978). In a

5

habeas corpus proceeding, before a guilty plea will be set aside based on the fact that the defendant was incompetently advised, it must be shown that (1) counsel did act incompetently; (2) the incompetency must relate to a matter which would have substantially affected the fact-finding process if the case had proceeded to trial; and (3) the guilty plea must have been motivated by this error. *Id.* at 219, 838.

The Fourth Circuit Court of Appeals held that "a bad guess by counsel as to what the judge will do does not require revocation of the sentence." Cleckley, I-XIII Handbook on West Virginia Criminal Procedure E (citing *United States v. Futeral*, 539 F. 2d 329 (4th Cir. 1975); *Vanater v. Boles*, 377 F. 2d 898 (4th Cir. 1967)). Furthermore, "an attorney's 'bad guess' as to sentencing is no reason to invalidate a plea on the basis of ineffective assistance of counsel." *Id.* (citing *Little v. Allsbrook*, 731 F. 2d 238 (4th Cir. 1984); *United States v. White*, 572 F. 2d 1007, 1010 (4th Cir. 1978); *Vanater* at 899-900.) "[A]n erroneous sentence estimate by defense counsel does not render a plea involuntary. And a defendant's erroneous expectation, based on his attorney's erroneous estimate, likewise does not render a plea involuntary." *Allsbrook* at 241 (citing with approval *Wellnitz v. Page*, 420 F. 2d 935 (10th Cir. 1970)).

Petitioner alleges he entered into a guilty plea to First Degree Murder on or about May 23, 2006. At the time of his plea, he was on home confinement in lieu of bond. Petitioner alleges that trial counsel represented to him that he should plead guilty given his lack of criminal history and given his outstanding record on home confinement, he would have the ability to serve his sentence on home confinement. He further alleges that because of trial counsel's representations that he was a good candidate for home confinement, he entered into a plea under the false hope that he could serve Life with Mercy on home confinement

6

However, in his Questions Relative to Entry of Plea of Guilty, the Petitioner answered that no one made him any promises to get him to plead guilty. He answered that he understood that the judge alone makes the decision as to what sentence he would receive regarding the plea bargain and that the plea bargain only included a First Degree Murder plea with Mercy. Trial counsel's sentencing estimate, even if "erroneous", is not sufficient to render the plea involuntary. Trial counsel informed the Petitioner as to what he expected the sentence to be based on his experience and best prediction. Home confinement was not a part of the plea agreement, which the Petitioner understood. Petitioner was well aware of the sentence that could result from a plea to First Degree Murder. Trial counsel made a long and good faith effort on behalf of Petitioner to get the sentence to be served on home confinement at the sentencing hearing. The Petitioner may have been informed home confinement was a possibility, but his reliance on that does not make his plea involuntary.

Moreover, during the plea colloquy, Petitioner told the Court that the plea to First Degree Murder meant that he would serve a minimum of fifteen years. *Guilty Plea Tr.*, p. 7, lines 12-15. The Court told the Petitioner that he would get a life sentence and would not be eligible until he served a minimum of fifteen years, and the Petitioner replied, "Yes sir." *Id.* at lines 16-19. Additionally, the Court asked trial counsel if the Petitioner understood all of that, and he told the Court they went over that "quite a few times" to which Petitioner again stated, "Yes." *Id.* at lines 20-23.

Based upon the evidence presented through the briefs, this Court finds that trial counsel did not act incompetently and that the Petitioner's guilty plea was not involuntary. Accordingly, the Court **FINDS** and **CONCLUDES** that Petitioner has failed to prove "Involuntary Guilty Plea" by a preponderance of the evidence and the claim is hereby denied.

7

## INEFFECTIVE ASSISTANCE OF COUNSEL

### (Ground #2)

"[T]he right to effective assistance of counsel is recognized not only for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial." *United States v. Cronic,* 466 U.S. 648 (1984). In West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-prong test established in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) and adopted by our state in *State v. Miller,* 194 W. Va. 3 (W.Va.1995).

The first prong of the *Strickland/Miller* test requires that a petitioner "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. Then, the court must determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. *Strickland,* 466 U.S. at 690. There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Miller,* 194 W. Va. at 15, quoting *Strickland,* 466 U.S. at 689. "In other words, we always should presume strongly that counsel's performance was reasonable and adequate.

A defendant seeking to rebut this strong presumption of effectiveness bears a difficult burden because constitutionally acceptable performance is not defined narrowly and encompasses a 'wide range.' The test of ineffectiveness has little or nothing to do with what the *best* lawyers would have done. Nor is the test even what most good lawyers would have done. We only ask whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at the time, in fact, worked adequately" *Miller,* 194

8

W. Va. at 16. In giving meaning to the requirement [of effective counsel], we must take its purpose—to ensure a fair trial—as the guide.

The benchmark for judging any claim of ineffectiveness must be whether trial counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Strickland*, 466 U.S. at 686. "In deciding ineffective assistance claims, a court need not address both prongs of the *Strickland/Miller* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test." *State ex rel. Daniel v. Legursky*, 195 W. Va. 314, 321, 465 S.E. 2d 416, 423 (W.Va. 1995). "Failure to meet the burden of proof imposed by either part of the *Strickland/Miller* test is fatal to a habeas petitioner's claim." *State ex rel Vernatter v. Warden, West Virginia Penitentiary*, 207 W. Va. 11, 528 S.E. 2d 207 (W.Va.1999), citing *Legursky*, 195 W. Va. at 465.

"A modified prejudice standard applies in cases where a conviction rests upon a plea of guilty." *Vernatter* at 18, 214. In order to satisfy the "prejudice" requirement following a plea of guilty, a habeas petitioner must show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at Syl. Pt. 6. Furthermore, "a 'reasonable probability' is 'a probability sufficient to undermine confidence in the outcome'". *Id.* at 18, 214. "Before a guilty plea will be set aside based on the fact that the defendant was incompetently advised, it must be shown that (1) counsel did act incompetently; (3) the incompetency must relate to the matter which would have substantially affected the fact-finding process if the case had proceeded to trial; and (3) the guilty plea must have been motivated by this error." *State ex rel. Levitt v. Bordenkircher*, 176 W.Va. 162, 171, 342 S.E. 2d 127, 137 (1986). Furthermore, "[b]efore an initial finding will be made that counsel

9

acted incompetently with respect to advising on legal issues in connection with a guilty plea, the advice must be manifestly erroneous." *Id.*

The United State Supreme Court elaborated on this issue in *Hill v. Lockhart*, 474 U.S. 52, 59 (1985) finding that in guilty pleas, "the 'prejudice' inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective assistance challenges to convictions obtained through a trial." As an example, the Court stated that "where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error 'prejudiced' the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. *Id.* Consequently, the assessment "will depend in large part on a prediction whether the evidence likely would have changed the outcome of the trial. *Id.*

In order to overturn a guilty plea, petitioners need to show their counsel was so incompetent that the pleas were not knowingly and intelligently made. *McMann v. Richardson*, 397 U.S. 759 (1970). According to the United States Supreme Court, "the decision to plead guilty before the evidence is in frequently involves the making of difficult judgments... [i]n the face of unavoidable certainty, the defendant and his counsel must make their best judgment as to the weight of the State's case. *Id.* at 769. The Court continued, "[c]ounsel must predict how the facts, as he understands them, would be viewed by a court. If proved, would those facts convince a judge or jury of the defendant's guilt? On those facts, would evidence be seized without a warrant be admissible? Would the trier of fact on those facts find a confession voluntary and admissible?" *Id.* at 769-770. Furthermore, "[q]uestions like these cannot be answered with certitude; yet a decision to plead guilty must necessarily rest upon counsel's answers, uncertain as they may be. Waiving trial entails the inherent risk that the good-faith evaluations of a

10

reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts. *Id.* The Court ultimately held, "[t]hat a guilty plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing. *Id.*

## A. COUNSEL FOR THE PETITIONER FAILED TO CONDUCT A PROPER INVESTIGATION BEFORE ALLOWING THE PETITIONER TO GIVE AN INCRIMINATING STATEMENT

In the landmark case of *Miranda v. Arizona*, 384 U.S. 436 (U.S. 1966), the United States Supreme Court held, "[t]he presence of counsel, in all the cases before us today, would be the adequate protective device necessary to make the process of police interrogation conform to the dictates of the privilege. *Id.* at 466. Moreover, the Court stated that "[t]he presence of an attorney, and the warnings delivered to the individual, enable the defendant under otherwise compelling circumstances to tell his story without fear, effectively, and in a way that eliminates the evils of the interrogation process." *Id.* The West Virginia Supreme Court held, "[c]ertainly, an investigation of the case must precede the making of decisions with regard to the representation of a defendant in a criminal case." *State ex rel. Strogen v. Trent*, 196 W.Va. 148, 152, 469 S.E. 2d 11 (1996). If counsel does not perform an adequate investigation, courts have no problem finding ineffective assistance of counsel. *Id.* The Court held that "[t]he fulcrum for any ineffective assistance of counsel claim is the adequacy of counsel's investigation. Although there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, and judicial scrutiny of counsel's performance must be highly deferential, counsel must at a minimum conduct a reasonable investigation enabling him or her to make informed decisions about how to best represent criminal clients. Thus, the presumption

11

is simply inappropriate if counsel's strategic decisions are made after an inadequate investigation." Syl. Pt. 5, *State ex rel. Vernatter v. Warden*, 207, W.Va. 11, 528 S.E. 2d 207 (W.Va.1999).

The record indicates that on November 1, 2005, the Petitioner was taken to the office of the Cabell County Prosecuting Attorney and an interview was conducted by the Huntington Police Department (HPD). He contends that Christopher Chiles, the former Prosecuting Attorney, Detectives Cass McMillan and Chris Sperry from HPD were present along with his trial counsel, Steve Jarrell. He alleges they questioned him further about the murder of Jason Williams and based upon advice of counsel, he gave a detailed account of what happened on the evening of July 31, 2005. Petitioner contends that had it not been for his counsel's advice, he would not have given said statement and that had counsel conducted a reasonable investigation, he would not have advised petitioner to give said statement. Petitioner contends his trial counsel was acting as an agent for the police and did not advocate for him.

Petitioner further contends trial counsel failed to investigate any information pertaining to the facts and circumstances, such as the Petitioner being under duress when he shot the victim. He asserts duress would have been a vital defense at trial and trial counsel should have realized that the State supposedly had no evidence outside of the co-defendant's girlfriend's statement. However, as reflected in the plea transcript, the State did have additional evidence, such as testimony from co-defendant's aunt, whom he had told he had hired Petitioner to murder the victim. *Guilty Plea Tr.* P.25, line 18-21. The co-defendant also gave statements about paying the Petitioner to commit the murder. *Id.* at p. 26, line 2-8.

During the plea colloquy, Petitioner indicated that his counsel had tried to help him, had not refused to do anything that he wanted him to do, and he was completely satisfied with his

12

representations on his behalf. *Guilty Plea Tr.* p. 4, lines 17-24. He further indicated that he agreed with trial counsel's statement that he gave him advice, went through the evidence, went through any possible defenses and went through what he thought the State would present, how they would present it and their possible outcomes and then left it up to the Petitioner as to what to do. *Id.* at page 4, lines 11-21. Furthermore, on page 20, lines 14-24, this Court asked if a statement was given to police, to which the Petitioner answered, "Yes". The Court then explained that if it was found that the statement wasn't freely and voluntarily given or was forced in some way, then he could toss the statement and do away with any evidence they found as a result of the statement. The Petitioner said he understood that and still proceeded with his plea. At no time did he object or attempt to inform the court his statement was not given freely when it was discussed. Furthermore, on pages 29, lines 16-22 of the *Guilty Plea Tr.*, Prosecutor Chiles informed the Court that the Petitioner had cooperated and had given three or four statements and was willing to testify against his codefendant. No objection from trial counsel or the Petitioner was noted.

## B. FAILURE TO ADVISE

This ground was not fully briefed but the Court considered this claim with the general ineffective assistance of counsel claims.

Based upon the evidence presented in the briefings and transcripts, this Court concludes that Petitioner voluntarily provided his statement to police. It does not appear that his statement was coerced and that he spoke to police with his counsel present. There is no evidence to suggest his attorney was acting as an agent of the State. Moreover, there is nothing before the Court to suggest counsel failed to investigate the case or discuss the duress defense and other trial strategies with Petitioner. In addressing the *Strickland/Miller* test, this Court finds that the

13

actions of trial counsel were the result of professional judgment. None of his actions were outside the wide range of professionally competent assistance. Accordingly, the Court FINDS and CONCLUDES that Petitioner has failed to prove "Ineffective Assistance of Counsel" by a preponderance of the evidence and the claim is hereby denied.

### SEVERER SENTENCE THAN EXPECTED
### (Ground #3)

Petitioner asserts that the sentence he received was not the sentence he had bargained for and was severer than expected. He alleges that he had never been arrested before at the time of his indictment and his only criminal violation before this incident was a citation for shoplifting. He argues that his sentence was severer than expected given that he was sentenced to Life with Mercy rather than an alternative sentence of home confinement. He further asserts that he was told by counsel he would likely receive home confinement instead of prison.

The West Virginia Supreme Court has adopted a two-part test to determine if a sentence is unconstitutionally excessive. The first test is a subjective test, which "asks whether the sentence for the particular crime shocks the conscience of the court and society." *State v. Adams*, 211 W.Va. 231, 233, 565 S.E.2d 353, 355 (2002). The second test is objective and considers "the nature of the offense, the legislative purpose behind the punishment, a comparison of the punishment with what would be inflicted in other jurisdictions, and a comparison with other offenses within the same jurisdiction. *Id.* at 234, 356.

The Petitioner has failed to show that his sentence meets either the subjective or the objective tests. He entered a guilty plea to First Degree Murder and received a sentence of Life with Mercy. This sentence does not "shock the conscience" of the court or society and it is a sentence widely expected for such a serious crime, regardless of past criminal history. Moreover, the sentence does not meet the objective test considering the nature of the offense, legislative

14

purpose to incarcerate such offenders for life or in comparing the sentence to those in other jurisdictions for a similar offense. Petitioner answered in his plea questionnaire and during his plea hearing that the penalty for First Degree Murder was "fifteen years to life" so he was fully aware of the sentence he could possible receive. Petitioner has failed to show that he received either an excessive sentence or a severer sentence than expected. Accordingly, the Court FINDS and CONCLUDES that Petitioner has failed to prove "Severer Sentence than Expected" by a preponderance of the evidence and the claim is hereby denied.

## QUESTION OF ACTUAL GUILT UPON AN ACCEPTABLE GUILTY PLEA
### (Ground #4)

Petitioner brings forth this claim from the factual basis of this court's acceptance of his guilty plea. "[A] guilty plea operates as an admission of the facts alleged in the indictment." Cleckley, 2 Handbook on West Virginia Criminal Procedure C. "A guilty plea is a solemn judicial admission of the truth of the charge, and the right to later contest that plea is generally foreclosed." Cleckley, 2 Handbook on West Virginia Criminal Procedure E. Additionally, the West Virginia Supreme Court held that "absent the special circumstance of a defendant claiming factual innocence while pleading guilty to a criminal charge, the requirement of Rule 11(f) that a trial court make an inquiry into the factual basis of the defendant's plea is not constitutionally mandated. It therefore follows under our reasoning in *Vernatter* that a simple violation of Rule 11(f) may not, standing alone and without a showing of prejudice, serve as a predicate for collateral relief." *State ex rel. Farmer v. Trent*, 209 W.Va. 789, 796, 551 S.E.2d 718 (2001).

In the "Questions Relative to Entry of Plea of Guilty", question 41, Petitioner provides as a factual basis for the crime, "I was threatening (sic) by Mark Stickler to shoot Jason Wilson. Mark Stickler brought the Jason Wilson to my employment place and threating (sic) by pistol to shoot Jason Wilson, and I shot him". He alleges his answer does not provide for a showing of

15

"unlawfully", "feloniously", "willfully", "maliciously" and/or "deliberately" nor does the answer indicate he acted with "premeditation". *See generally,* W.Va. Code §61-2-1. He informed the Court that he did shoot the victim, but did so under duress.

Petitioner admitted guilt to the facts alleged in the indictment when he pled in court. He admitted to the court his guilt to the charge of First Degree Murder. The State did recite their theory of the case and evidence that they would have put on that showed the Petitioner was involved in a murder-for-hire scheme and he was involved in planning the murder in advance. *Guilty Plea Tr.,* p. 24-25. The State had the testimony of the co-defendant's aunt whom he told that he had hired the Petitioner to kill the victim. *Id.* at p. 25, lines 18-21. Likewise, the State also had testimony from the co-defendant himself who admitted that he had hired the Petitioner to kill the victim. *Id.* at p. 26, lines 2-8.

Trial counsel stated that he and his client were aware of all of the evidence the State had presented. *Id.* at lines 13-16. Between the Petitioner's admission to committing the crime of First Degree Murder and the State's recitation of the anticipated evidence, this court found a sufficient factual basis to accept his guilty plea. Furthermore, Petitioner alleges there is a serious question of actual guilt based on being under duress. Trial counsel did not believe that the duress defense would hold up and informed Petitioner of that. Petitioner had to make the decision based on the weight of the State's case as to whether to plea or risk going to trial and he chose the former. Accordingly, the Court **FINDS** and **CONCLUDES** that Petitioner has failed to prove "Question of Actual Guilt Upon an Acceptable Guilty Plea" by a preponderance of the evidence and the claim is hereby denied.

16

Based upon the foregoing reasoning and case law, the Court has concluded that the Petitioner failed to establish a basis for his Petition and that the Writ of Habeas Corpus should be denied. This is a final order disposing of the matter in this case.

The Clerk shall send certified copies of this Order as follows:

Cabell County Prosecuting Attorney's Office
Sean Hammers
Box 38

Larry Tomblin
c/o Shawn Bartram
Bellomy & Turner
Box 23

Enter this Order this _____ day of March, 2016.

PREPARED FOR ENTRY:                     ORDER ENTERED:

_____               _____
Stacy Adkins, Law Clerk                 Alfred E. Ferguson, Judge

STATE OF WEST VIRGINIA
COUNTY OF CABELL
   I, JEFFREY E. HOOD, CLERK OF THE CIRCUIT
COURT FOR THE COUNTY AND STATE AFORESAID
DO HEREBY CERTIFY THAT THE FOREGOING IS A
TRUE COPY FROM THE RECORDS OF SAID COURT
ENTERED ON _____
   GIVEN UNDER MY HAND AND SEAL OF SAID COURT
THIS _____
_____, CLERK
CIRCUIT COURT OF CABELL COUNTY, WEST VIRGINIA

17