# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

Brian W.,
Petitioner Below, Petitioner

vs)  No. 17-0185 (Randolph County 14-C-105)

Michael Martin, Acting Warden,
Huttonsville Correctional Center,
Respondent Below, Respondent

**FILED**

**January 8, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Brian W., by counsel Jeremy B. Cooper, appeals the Circuit Court of Randolph County's February 14, 2017, order denying his petition for writ of habeas corpus. Respondent Michael Martin, Acting Warden, by counsel Gordon L. Mowen II, filed a response.[1] Petitioner filed a reply. On appeal, petitioner argues that the circuit court erred in denying his petition, which was based on the grounds of the State's failure to disclose material information, the State's misconduct in using slurs during the trial, ineffective assistance of counsel, and cumulative error.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In October of 2010, petitioner was indicted on one count of sexual abuse by a parent, guardian, or custodian and one count of first-degree sexual assault. The victim was the minor daughter of petitioner's girlfriend.

Before trial, petitioner's trial counsel sought to exclude the testimony of a Child Protective Services ("CPS") worker, Allyson Scott. The parties ultimately stipulated that Ms. Scott would not offer any testimony at trial other than to lay a sufficient foundation to introduce a videotaped interview of the minor victim. This interview, a competency evaluation, was

---

[1]Since the filing of the petition in this case, the warden at Huttonsville Correctional Center has changed and the acting warden is now Michael Martin. The Court has made the necessary substitution of parties pursuant to Rule 41(c) of the West Virginia Rules of Appellate Procedure.

1

performed as a courtesy arranged by the Department of Health and Human Resources ("DHHR"), and was not performed by the psychologist the circuit court had ordered to perform the evaluation. Before trial commenced, petitioner was given the opportunity to continue the matter in order to obtain an additional competency evaluation. When asked how he wished to proceed, petitioner responded "I'd like to get it over with." As such, the matter proceeded to a jury trial in which petitioner was convicted of both counts and sentenced to the maximum term, an effective sentence of twenty-five to fifty-five years of incarceration. Petitioner appealed his sentence to this Court, and the appeal was denied in *State v. Ward*, No. 12-0300, 2013 WL 3185079 (W.Va. June 24, 2013) (memorandum decision).

Subsequently, petitioner filed the instant habeas corpus matter, raising seven grounds for relief. These issues were considered at an omnibus hearing held in July of 2016. By order dated February 14, 2017, the circuit court denied petitioner's petition for writ of habeas corpus. It is from this order that petitioner appeals.

This Court reviews appeals of circuit court orders denying habeas corpus relief under the following standard:

> "In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syllabus point 1, *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006).

Syl. Pt. 1, *State ex rel. Franklin v. McBride*, 226 W.Va. 375, 701 S.E.2d 97 (2009).

On appeal, petitioner first argues that the circuit court erred in not finding that the State failed to disclose documentation relevant to his defense. Specifically, petitioner alleges that subsequent to the trial, trial counsel became aware that Ms. Scott, the CPS worker in the case, had been disciplined in 2007 for poor job performance in a matter unrelated to petitioner's criminal proceedings. Petitioner argues that the State was required to disclose documentation related to Ms. Scott's disciplinary action as it falls under "impeachment evidence" as described in *State v. Youngblood*, 221 W.Va. 20, 650 S.E.2d 119 (2007).[2] We disagree. In order to obtain relief, petitioner must establish that the prosecution was aware of, but withheld exculpatory evidence. *See* Syl. Pt. 4, *State v. Hatfield*, 169 W.Va. 191, 286, S.E.2d 402 (1982); *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194 (1963). In *Youngblood*, this Court recognized that a "police investigator's knowledge of evidence in a criminal case is imputed to the prosecutor . . . ." 221 W.Va. at 22, 650 S.E.2d at 121, Syl. Pt. 1.

As the circuit court noted, Ms. Scott is not a police investigator. However, petitioner attempts to navigate around this fact by arguing that Ms. Scott falls under the penumbra of the

---

[2]Petitioner failed to include the documentation regarding Ms. Scott's disciplinary history in the record on appeal.

term as a member of the investigation team, noting that this Court stated in its opinion in *Youngblood* that "[t]he decision in *Kyles* [*v. Whitely*, 514 U.S. 419 (1995)] stands for the proposition that 'it is proper to impute to the prosecutor's office facts that are known to the police and other members of the investigation team.'" 221 W.Va. at 27, 650 S.E.2d at 126. Petitioner argues that Ms. Scott is a member of the investigation team, especially in light of the fact that the prosecutor relied heavily on the investigation performed by CPS in order to prove the charges brought against petitioner. We disagree. Ms. Scott was a CPS worker and no evidence in the record suggests that she was acting as a police investigator at any time during the underlying proceedings. Moreover, the record indicates that petitioner admitted that he had no "factual basis to assert that the [p]rosecuting [a]ttorney [ ] had any actual knowledge of Allyson Scott's disciplinary record . . . ." Thus, petitioner failed to establish that the prosecutor had knowledge of impeachment evidence, imputed or otherwise, that necessitated disclosure to petitioner.

Even assuming, arguendo, that Ms. Scott is a member the investigation team within the meaning of *Kyles*, the failure to disclose the documentation regarding her disciplinary history does not constitute a violation of petitioner's constitutional due process rights under *Brady*. While petitioner argues that the State had a duty to disclose this impeachment evidence prior to trial, we do not agree. We have previously held that

> [t]here are three components of a constitutional due process violation under *Brady v. Maryland*, [ ] (1) the evidence at issue must be favorable to the defendant as exculpatory or impeachment evidence; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) the evidence must have been material, i.e., it must have prejudiced the defense at trial.

*Youngblood*, 221 W.Va. at 22, 650 S.E.2d at 121, Syl. Pt. 2. As mentioned, the parties stipulated that Ms. Scott would only testify in order to lay the foundation for a video of an interview of the victim. During the omnibus hearing, trial counsel testified that limiting Ms. Scott's testimony was part of his defense strategy, as he believed she had a tendency to be over-zealous and would supply more information than necessary while testifying. Trial counsel was successful in this endeavor as Ms. Scott only testified to foundational matters. She did not offer any substantive testimony at trial and thus, there was no need to impeach or attack her credibility. Further, this document does not appear to be material as it regards actions taken by Ms. Scott three years before petitioner's trial and was in no way related to his case. As such, petitioner's argument that the circuit court erred by not finding that the State should have disclosed Ms. Scott's disciplinary history is without merit.

Petitioner next argues that the circuit court erred in finding that the State's use of the term "deadbeat" during closing argument did not rise to the level of prejudice to petitioner.[3] Despite

---

[3]During the trial, the prosecutor made statements highlighting petitioner's unemployment and called him a "deadbeat" during rebuttal. These statements were made in an effort to highlight petitioner's unemployment because he was accused of sexual abuse as a parent, guardian, or

(continued . . . )

petitioner's argument to the contrary, the prosecutor's use of the term "deadbeat" is not of constitutional magnitude and is not cognizable in habeas petitions.

Petitioner next assigns as error the circuit court's failure to find that he received ineffective assistance of counsel. Specifically, petitioner contends that his trial counsel failed to move to admit the magistrate court disposition sheet into evidence, failed to obtain a second competency evaluation, and failed to object to the state's use of the improper and prejudicial term "deadbeat" during closing argument.[4]

> In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

Syl. Pt. 5, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995). Furthermore,

> [i]n reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue.

*Id.* at 6-7, 459 S.E.2d at 117-18, Syl. Pt. 6.

---

custodian while he was supposed to be babysitting the victim. This exact term was used only once and his state of unemployment was referenced only a few times.

[4]Petitioner also asserts ineffective assistance of counsel due to trial counsel's alleged failure to instruct him regarding his constitutional right to remain silent or testify on his own behalf. However, this claim was raised in neither the original habeas petition nor the amended petition below. Despite this omission and despite several objections by the State, the circuit court allowed petitioner to develop his argument on the record during the omnibus hearing, after noting that it was outside the scope. When the order was issued, the circuit court did not make any findings regarding this claim. In any event, the transcript from the trial proceedings establishes that trial counsel indicated that he discussed this right with petitioner. Further, when expressly asked by the circuit court, petitioner agreed that he and his attorney discussed his right to testify or remain silent at "great length." Finally, the circuit court informed petitioner of his right to testify or remain silent numerous times, in great detail. As such, we find that petitioner is not entitled to relief in this regard.

4

Petitioner's first contention regarding his claim of ineffective assistance is that trial counsel failed to move a magistrate court disposition sheet into evidence, a failure that he claims is deficient under an objective standard of reasonableness. We disagree. Prior to the proceedings leading to trial, trial counsel initially obtained a "no probable cause" finding at the preliminary hearing in magistrate court. During the course of the trial, trial counsel had the opportunity to cross-examine the State's first witness, Trooper K.A. Corley. Trial counsel was able to extract from Trooper Corley testimony that there was a "no probable cause" finding at the magistrate level. However, trial counsel failed to move the magistrate court disposition sheet into evidence and admitted to such at the omnibus hearing. Trial counsel testified "I think probably the reason it wasn't in the forefront of my mind during the course of trial is because I had already elicited that testimony from Trooper Corley." In looking at the standard set forth in *Strickland*, we find no error. While trial counsel admitted that he unintentionally omitted this disposition sheet, there is no evidence suggesting that it was prejudicial to petitioner, especially in light of the fact that the same testimony was elicited during cross-examination. Petitioner fails to show how, absent trial counsel's omission, the result of his trial would be any different. As such, we agree with the circuit court's decision that trial counsel's omission did not constitute ineffective assistance of counsel.

Petitioner's second contention regarding his claim of ineffective assistance is that trial counsel should have obtained an additional competency evaluation prior to trial. We find no merit in petitioner's claim. Petitioner's argument here ignores the fact that it was he who changed the course of his case. In the proceedings below, petitioner was given the opportunity to continue the matter in order to obtain an additional competency evaluation, as there had only been a "courtesy interview" performed, despite orders from the circuit court for a competency evaluation to be performed by a neutral person. When asked how he wished to proceed, petitioner responded "I'd like to get it done and over with." Accordingly, the trial proceeded. During the omnibus hearing, trial counsel testified that petitioner was asked how he wanted to proceed, that he chose not to continue the hearing, and that trial counsel was not going to "get in his way on that." Trial counsel also testified that he agreed with petitioner's decision to proceed to trial, noting that obtaining an additional competency evaluation might have hurt petitioner's position in the event that the medical professional was permitted to testify at trial. The record indicates that petitioner was given the option of continuing the trial but wished to proceed as scheduled. Thus, we find that the circuit court did not abuse its discretion in finding that counsel did not render ineffective assistance of counsel based upon this allegation.

Petitioner's final contention is that he received ineffective assistance when trial counsel failed to object to the State's use of the term "deadbeat." As previously mentioned, we have found that the State's isolated use of the term "deadbeat" was not of constitutional magnitude. Trial counsel testified during the omnibus hearing that the comment was irrelevant and that, had he felt the comment was prejudicial, he would have raised it in post-trial motions. We find no deficiency in trial counsel's actions. Based on the evidence of record, petitioner has failed to establish that he received ineffective assistance of counsel under any and all of the allegations set forth and, therefore, the circuit court did not err in finding petitioner merited no relief in this regard.

Petitioner's final assignment of error is that the circuit court erred cumulatively, prejudicing him. We find petitioner's argument to be without merit.

For the foregoing reasons, we affirm the circuit court's February 14, 2017, order denying petitioner's petition for writ of habeas corpus.

Affirmed.

**ISSUED:** January 8, 2018

**CONCURRED IN BY:**

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker